**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TIDELANDS MARINE SERVICE, INC., Respondent.**

**No. 21108.**

United States Court of Appeals
Fifth Circuit.

Dec. 3, 1964.

Leonard M. Wagman, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Arnold Ordman, Gen. Counsel, Elliott Moore, Atty., N. L. R. B., Washington, D. C., for petitioner.

William A. Brown, Powell, Brown & Maverick, Houston, Tex., for respondent.

Before HUTCHESON, RIVES and BROWN, Circuit Judges.

HUTCHESON, Circuit Judge.

This is a petition for approval and enforcement of an NLRB decision and order against respondent, reported at 144 NLRB No. 1. The Board found that respondent violated Sec. 8(a) (1) of the Act: by granting a wage increase to employees during the union's organizing campaign; asking prospective employees whether they were union members; conditioning employment of an applicant upon his promise to cross a picket line should one be established, and by engaging in surveillance of union activities of its employees. The Board found Sec. 8 (a) (3) and (1) violations in discharging one employee because of his membership in the union and two others because of their activity on behalf of the union. The Board also found violations of Sec. 8(a) (5) and (1) by refusing to bargain collectively with the union which was certified by the Board as the bargaining representative.

The Board's order requires the respondent to cease engaging in the unfair labor practices found or in any other manner interfering with its employees' right to self organization, and it orders the respondent to offer reinstatement to employees Klaus, Elkins, and Sons with back wages and to bargain with the union and post the customary notice.

A careful consideration of the record convinces us that it fully supports the findings and the decision and order of the board, that there was no error in any of the rulings complained of, and that the decision and order of the board must be enforced.

■ Respondent, completely disregarding the settled rule that the burden is on it to show that there were prejudicial errors in the rulings, findings, and/or decision and order of the board, seems to feel that it is the burden of the board to show that its proceedings were not attended with prejudicial error, indeed were completely without fault, and seems to feel it has the right to a retrial of the issues here.

While we cannot permit such a reliance here, we can and do point out that the record shows the following evidence with respect to each violation found and ordered to cease:

■ (1) Restraint and coercion in violation of Sec. 8(a) (1): Four days after the union had its first organizational meeting, respondent replaced another company as operator of the boats tending Humble's offshore drilling rigs and began operating the boats with the same employees as used by the former operator. Weaver was appointed port captain in charge of respondent's operations when it took over from the other company. He testified that he was instructed to get acquainted with the employees, learn their likes and dislikes, eliminate their causes for dissatisfaction and "persuade them to go along with us." Within a week after Weaver assumed his duties, the respondent granted a wage increase of about $40.00 per month to the boat operators, and shortly thereafter another raise for night shift work

and for captains. Shortly after respondent took over operations Weaver asked employee Rountree how he felt about the union and when he replied that he was against it Weaver asked him if he "would help him get any information against the union * * *", and he agreed to do so. Rountree reported to Weaver from time to time "on things that he would pick up and hear concerning union activities * * *." Weaver testified that Rountree "was more or less a set of ears" for him among the boat operators. Weaver admitted that he asked applicants for jobs whether they were union members, and there is testimony that he asked an employee if he knew anyone who would cross a picket line if it should be established, a man was suggested and hired.

Respondent concedes that the portion of the order which prohibits it from asking prospective employees whether they are willing to cross picket lines is proper and does not resist enforcement of the Order to that extent, but asserts the record shows no other violation. Respondent argues that Weaver did not order Rountree to report to him but that it was a spontaneous action coming from a man who was strongly anti-union and whom the union supporters knew to be antiunion. Respondent submits that the conversations were within the protection of constitutional right to free speech and that no threat or promise was made to Rountree. The Board contends that in light of the unlawful discharges of employees, the company's surveillance was apparently designed to obtain information to be used in discrimination and therefore constituted unlawful interference. In view of the discharges, to be discussed below, there seems to be substantial evidence to support the Board.

■ In urging that the wage increases were violations of Sec. 8(a)( 1), the Board relies on N. L. R. B. v. Exchange Parts Co., 375 U.S. 405, 84 S.Ct. 457, 11 L.Ed.2d 435, in which it was held, reversing this court, that it was an 8(a) (1) violation for an employer, shortly before a representation election to confer economic benefits on his employees for the purpose of inducing them to vote against the union. Respondent attempts to distinguish its situation from that case on the grounds that here there was no independent findings that the motive in granting the wage increase was to defeat unionism, and that in that case a company that had long been the employer made changes in the face of a unionization effort whereas here respondent was a new employer adjusting inequities that had been allowed by the former employer. The Board contends that the inference of intent is clear from the company's other attempts to influence the employees' votes. Respondent admits that it is wholly owned by the Brown & Root Employees Retirement and Savings Plan and that Brown & Root was the employer prior to its taking over operations, but argues it is a separate company in a separate business. In our opinion, the close relation between the two employers is fatal to respondent's attempted distinction. We are of the clear opinion that this portion of the case is controlled by the Supreme Court's opinion in the Exchange Parts case, supra.

■ (2) Discharge of employees Sons, Klaus and Elkins alleged to be Sec. 8(a) (3) and (1) violations: Weaver knew that Klaus and Elkins were key union men in the organizational effort. When Humble directed him to reduce the number of boat operators from eighteen to fifteen and suggested eliminating Rountree and two other employees, Weaver revised the list and retained Rountree, eliminating Klaus and Elkins instead. The discharged operators were much more experienced than the men who were retained. Prior to discharging the two men Weaver arranged for them to be employed by Brown & Root because he was afraid the company might otherwise be confronted with an unfair labor practice charge. The respondent contends one was discharged because of "strained relations" and the other because of an "indifferent attitude". The Trial Examiner found discrimination against Sons, to be discussed below, but

not Klaus and Elkins, but the Board found it against all three. The difference apparently resulted from conflicting decisions as to which witnesses should be credited, the Examiner crediting Weaver here, and the Board crediting Klaus and Elkins. There is substantial evidence to support the Board finding.

■ As to the discharge of Sons, it should be noted that he was the man hired after he stated he would cross a picket line. Six weeks after hiring Sons, Weaver retained him when he discharged Klaus and Elkins. A short time later, learning that Sons had joined the union, Weaver stated, according to one witness, that Sons had "sold out" by joining the union. Sons was then informed that he was no longer needed by the company. Respondent contends that his discharge had nothing to do with the union but was because he had been hired to serve as relief man during vacations and, since all the vacations were taken, he was no longer needed. There is substantial evidence to support the Board finding of discrimination as to Sons.

(3) Allegation of Sec. 8(a) (5) and (1) violation by refusal to bargain: The sole issue raised here is the validity of the Board's certification of the union. If it was valid, the refusal to bargain is undisputed. Respondent requested a review of the Regional Director's certification of election, but the Board ruled that it was not timely filed, having been received two days after the time allowed for filing the request. Respondent argues that it was timely filed on the grounds that the time allowed should be calculated from the time it received notice of the direction, rather than from the time of mailing of notice by the Regional Director. Neither party cites authority for its contention but the Board argues that since the Company's objections upon which it based its request for review were considered with the objections to the election, no injury to the company resulted.

■ Respondent objects to the conduct of the election alleging that the representation proceedings were improperly delegated from the Board to subordinate employees, and that the election was held before expiration of the time for appeal from the decision of the Regional Director to the Board in violation of Board rules. The Board replies that no request for review had been filed so it was proper to conduct the election when it was held and that in any event the company had previously agreed to the date for the election. It would seem that these matters are left primarily to the determination of the Board. N. L. R. B. v. Waterman S.S. Corp., 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704 stated: "The control of the election proceeding, and the determination of the steps necessary to conduct that election fairly were matters which Congress entrusted to the Board alone."

■ Respondent objects to conduct affecting the result of the election on the part of union men. There was testimony about threats to an employee's family if he were to cross a picket line, but the Regional Director conducted an investigation and concluded that the comments were made "in a jocular vein and amounted to mere banter", and that there was no evidence that the union authorized or condoned the reported conduct. The Board contends that it has acted reasonably in determining that the conduct did not prevent a free choice, citing Shoreline Enterprises, of America v. N. L. R. B., 262 F.2d 933, 69 A.L.R.2d 1174 (5th Cir.). No formal hearing was held on these charges, and respondent argues it expressly refused to bargain or to recognize the union in order to obtain a hearing on charges of refusal to bargain where these matters could be fully investigated. The Board contends, correctly we think, that respondent failed to raise any substantial issue of fact, and is therefore neither entitled to a hearing nor prejudiced by the Board's failure to hold one. "M" System, Inc., 116 N.L. R.B. 1725; Independent Linen Service Company of Mississippi, 124 N.L.R.B. 717, 719; Remington Rand Division of Sperry Rand Corp., 118 N.L.R.B. 1367. Cf. N. L. R. B. v. Air Control Products,

335 F.2d 245 (5th Cir. 1964); N. L. R. B. v. O.K. Van Storage, Inc., 297 F.2d 74 (5th Cir); N. L. R. B. v. Duval Jewelry Co. of Miami, 357 U.S. 1, 78 S.Ct. 1024, 2 L.Ed.2d 1097.

The petition for enforcement should be, and it is hereby,

Granted.

Friendly, Circuit Judge, dissented in part.