RUSSELL–NEWMAN MANUFACTUR-
ING CO., Inc., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

and

International Ladies' Garment Workers
Union, AFL–CIO, Intervenor.

No. 25400.

United States Court of Appeals
Fifth Circuit.

Feb. 3, 1969.

Fritz Lyne, Lyne, Klein & French, Dallas, Tex., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Leonard M. Wagman, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, N.L. R.B., Washington, D. C., for respondent.

David R. Richards, Dallas, Tex., for intervenor, Int'l Ladies' Garment Workers Union; Mullinax, Wells, Mauzy, Levy & Richards, Dallas, Tex., of counsel.

Before TUTTLE and GEWIN, Circuit Judges, and PITTMAN, District Judge.

TUTTLE, Circuit Judge:

 The NLRB found the company violated Sections 8(a) (1), (3), and (5) of the NLRA and the company petitioned for review. The company is a textile manufacturer with plants at Denton and Pilot Point, Texas. The plants are about eighteen miles apart. The union, the ILGWU, represents the employees at Denton, while the Pilot Point plant is unorganized. The following actions were found to violate the Act. On January 19, 1966, the Pilot Point employees were granted a five cent per hour salary increase while Denton wages remained the same. The Board found that at this time the company was aware of the union's efforts to organize Pilot Point and the disparate wage treatment had no economic justification; that this discriminated against the organized Denton employees and was designed to encourage their abandonment of the union in violation of Section 8(a) (3), and also constituted an interference with the right of self organization of the Pilot Point employees in violation of Section 8(a) (1). In February, 1966, the company unilaterally instituted a work point system at both plants. The Board found this to be in violation of the Section 8(a) (5) duty to bargain.[1] The Company was ordered to take affirmative action to: rescind the application of the work point system to its Denton employees; adjust the wage rates of the Denton employees to reflect the five cent per hour wage increase they did not receive when the Pilot Point employees received that adjustment on January 19, 1966; and make whole the Denton employees who would have received the five cent per hour increase had it been granted on January 19, 1966.

## I. THE REFUSAL TO BARGAIN.

 The union won an election on January 26, 1965, and the Regional Di-

---

1. The trial examiner found that the company's unilateral grant of a wage increase to Denton employees in September, 1966, constituted a further refusal to bargain. This allegation entered in the case when the trial examiner permitted the General Counsel to amend the complaint on the first day of the hearing. The company attacks this as a denial of procedural due process. The issue is moot, however, as the General Counsel moved to delete the allegation upon appeal to the Board and the motion was granted.

The company also contends that the entire action is barred by the six-month statute of limitations of the Act. However, it is clear from the record that the charge was filed four months after the acts occurred. The fact that there was a discrepancy between the complaint and the original and first amended charges is not cause to set the action aside because such technical pleading rules as the company here urges are inappropriate. Indeed, the company made no claim that the error prejudiced their preparation of the case.

rector certified it as the bargaining agent for the Denton employees on March 3, 1965. To challenge the election, the company refused to bargain. The election was subsequently upheld and the Board's order enforced in an unpublished per curiam memorandum of the District of Columbia Court of Appeals, dated April 12, 1967. The company argues that there is no need to enforce the Board's order here as it relates to the refusal to bargain because the decision of the District of Columbia court makes a further order unnecessary. We do not agree. The acts which formed the basis of the charge in this case are different from those which were involved in the District of Columbia case. And it is not disputed that this court has jurisdiction to enforce an order requiring the company to cease refusing to bargain based on the facts presented here. Therefore, we see no reason to deprive the parties of their otherwise clear rights to have an order enforceable in this circuit if the order is not obeyed.

## II. THE 8(a) (3) DISCRIMINATION.

■■ When there is unjustified disparate treatment between represented and unrepresented employees designed to induce the former to abandon their union, Section 8(a) (3) has been violated. While it is necessary to prove that the employer's motivation was to discriminate so as to discourage union membership, specific evidence of such an intent is not required. Radio Officers Union, etc. v. NLRB, 347 U.S. 17, 43–45, 74 S.Ct. 323, 98 L.Ed. 455 (1954).

The company offered proof in the form of efficiency charts which showed that the Denton plant was less efficient than Pilot Point and a company vice president testified that was why Pilot Point got an increase and Denton did not.

The trial examiner, however, was not convinced that the wage decisions were based on the comparative efficiency of the two plants. He said the efficiency charts relied on by the company did show that Denton was less efficient but this still did not explain why Pilot Point got an increase while Denton did not. "The lines of efficiency at both plants seem to have been running parallel throughout that period * * *. These charts do not persuade me to alter my conclusion that the increase at Pilot Point and the failure to grant the same increase at Denton were discriminatory."

The history of wage increases at the two plants is instructive. Both plants received wage increases in July, 1963. The trial examiner found that subsequently Pilot Point employees received five cent increases on April 29, 1964, February 3, 1965, and January 18, 1966. Denton employees received no raises from July, 1963, through January, 1966. The increases seemed to the trial examiner coincidental with the union's organization campaign. Except for 1962, the company had granted employees at both plants yearly increases from 1959 to the beginning of union activity in 1963. The same work skills are required in both plants and both receive the same fringe benefits. During the pre-union period, the Denton employees consistently received higher wages than Pilot Point. After the union victory at Denton, however, that plant's wages gradually were surpassed by Pilot Point.

■ The company offered no evidence that it had a policy of rewarding employees when efficiency was above a certain percent and denying it when it was below a certain percent. The differences between the two plants' efficiency ratings in the months preceding the increase were seldom more than ten percent. Denton was generally above 70% efficient while Pilot Point was generally below 90% efficient. There is no requirement, as the company seems to imply, that the trial examiner rely solely on the testimony of the company vice president. The Board affirmatively showed that the plants seemed to have been entitled to and actually did receive equal treatment until the Denton plant was organized. The trial examiner found the company's justification unpersuasive. There is no reason why the testimony

of the vice president must be taken to have resolved the issue in favor of the company.

 In view of the above, there was substantial evidence to support the Board's finding that the company's disparate treatment between the two plants was not economically justified and, instead, was based on a desire to encourage the Denton employees to abandon their union so that they, too, could get wage increases.

## III. THE 8(a) (1) VIOLATION.

The company contends that the five cent per hour increase granted to Pilot Point employees did not violate Section 8(a) (1) because it was justified by the plant's efficiency rating and it had no knowledge that the union was attempting to organize the plant.

A grant of a wage increase during an organization campaign intended to discourage union membership violates Section 8(a) (1). NLRB v. Exchange Parts, 375 U.S. 405, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964); NLRB v. Tidelands Marine Service, Inc., 339 F.2d 291 (5th Cir. 1964). The question of the company's economic justifications has already been discussed. The Board concluded that the grant to Pilot Point and denial to Denton was not economically justified. Therefore, the sole remaining question is whether there was substantial evidence to support the Board's finding that the company was aware of the union's organization campaign when the increase was granted in January, 1966. Company officials denied having actual knowledge that there was a campaign in progress.

The union had begun its organizational campaign at the two plants in the Spring of 1964, culminating in the victory at Denton in January, 1965. Shortly after this election, the company granted a five cent increase per hour to its Pilot Point employees and posted a "For Sale" sign on its Denton plant. The Board found that these acts violated Section 8(a) (1). That decision was appealed to this court in separate actions.[2]

Beginning in early May and continuing throughout 1965, a union organizer tried to update expired authorization cards at Pilot Point. He was present at Pilot Point for two weeks in November, 1965 and conducted some additional organizational activity. Also, the union was corresponding with its organization committee at Pilot Point during this time. Although the campaign was admittedly not very vigorous, based on the foregoing, we cannot say that the finding that the company was aware that there was a campaign in progress to organize the Pilot Point employees was not supported by substantial evidence.

The order of the Board will be enforced.

2. Russell-Newman Mfg. Co. v. NLRB, and ILGWU v. NLRB, 5 Cir., 407 F.2d 247. The two cases were consolidated. The latter involved an appeal by the union based on a Board denial of certain relief requested by it.