**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**REXALL CHEMICAL COMPANY, a Division of Rexall Drug and Chemical Company, Respondent.**

No. 27885

Summary Calendar.

United States Court of Appeals Fifth Circuit.

Oct..30, 1969.

Rehearing Denied Dec. 19, 1969.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C.,

Elmer P. Davis, Director, Region 16, N.L.R.B., Ft. Worth, Tex., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, John I. Taylor, Jr., James P. Hendricks, Attys., N.L.R.B., for petitioner.

Hershel A. Phillips, Los Angeles, Cal., William L. Keller, Allen Butler, Clark, West, Keller, Sanders & Ginsberg, Dallas, Tex., for respondent.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

 This is a petition for enforcement of an order of the National Labor Relations Board.[1] The company was found to have violated Section 8(a) (1) of the Act (29 U.S.C.A., Sec. 158(a) (1)) by announcing and granting an improved vacation plan in order to dissuade its employees from engaging in their Section 7 rights. Concluding, as we do, that there is substantial evidence on the record as a whole to support the Board's finding we enforce the order.[2]

Shell, El Paso Products, General Tire and Rexall are all petro-chemical plants located in Odessa, Texas. In 1965 Shell adopted a policy of giving its employees a three week vacation for those that had been employed for five years ("three for five"). El Paso adopted a like policy in July, 1966. General Tire fell in line in late fall 1966. Until Rexall announced on March 20, 1967, a "three for five" vacation plan effective April 1, 1967, its employees with one to ten years of service were entitled to receive only two weeks' vacation.

Rexall, disclaiming any anti-union animus or knowledge of an active union organizational campaign, urges that it had very good business reasons for not announcing a new vacation policy until it did so. General Counsel, on the other

1. 172 NLRB No. 147, issued July 29, 1968.

2. Pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. *See* Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804, Part I; and Huth v. Southern Pacific Company, 5 Cir. 1969, 417 F.2d 526, Part I.

hand, argues that the company's action was to discourage union support.

From its inception in 1961 Rexall experienced union activity without incident and generally was competitive with others in establishing wage rates and other benefits. Beginning in 1965, however, Rexall's local management in Odessa, aware of the employees' discontent with the existing vacation policy, had made recommendations to the company headquarters to increase the vacation period from two to three weeks for those having five years' longevity. Nothing happened. For some months prior to January, 1967, Rexall's employees had made it known to management that they were "going to get 'three for five or organize'" and had openly called Production Superintendent Fife, "three for five Fife."

When vacation schedules were circulated in January, 1967, providing for only two week vacations as in past years, the plant employees contacted a union representative,[3] who promptly mailed organizational literature and cards to all of the plant employees. There followed membership solicitations, organization decisions and the posting of "three for five or organize" signs on the plant bulletin boards.

On February 6, 1967 the plant manager, having seen the union organizational literature, sent a letter to the employees in which he attempted to discourage them from becoming interested in union representation "interferring [sic] in our company and the way we work together." About March 6, 1967, the plant manager received word from the company's Administrative Vice President that the "three for five" vacation policy had been approved effective April 1, 1967, and this was announced to the employees on March 20, 1967.

Pointing out that it is a conglomerate of companies operating in diverse fields, Rexall argues that it was concerned about the overall effect of liberalized vacation benefits which would be restricted to its Odessa plant and thus it was necessary for the company's executives in Los Angeles to have the benefit of surveys over a protracted period of time to make such an important management decision. Furthermore, the company submits that there was no real reason for improved vacation benefits until the precise time that they were announced. Rexall argues that local management had freely discussed improved vacation plans with the employees since 1966, and the employees knew that local management had recommended a change. The need for the change in vacation policy was dictated, the company urges, so that it could stay competitive and prevent a drain of its employees to the other petro-chemical companies. We are unpersuaded by the company's contentions.

Management at the Odessa plant had been making recommendations for a "three for five" vacation policy to the executive office in California since 1965. The company's explanation that until 1967 it had been making up its mind "places an unreasonable strain upon credulity that so egregious a time—perhaps as long as three years—would be required for making up its mind."[4] Furthermore, the abrupt turnabout from the continued vacation policy of two weeks, in effect in January, to the "three for five" announced in March, is rationally explained by the union's concerted action about which the company had full knowledge, and which, we are convinced, pressed management into a decision.

Rexall contends that it was not pressed into announcing the "three for five" plan by the union activity. Rather, it contends that no prior announcement was made because, according to its records, none of its employees would have been eligible for the plan until April 1,

3. Oil, Chemical and Atomic Workers International Union, AFL–CIO.

4. Trial Examiner's Findings, Record on Appeal at 12.

1967, and thus any prior announcement would not have conferred a present benefit on them. This argument ignores the fact that eventual eligibility for longer vacations is a present benefit to employees. This factor was recognized by the company's plant manager when, in 1965, he recommended a change of vacation policy effective January 1, 1966, which would have been announced about two years prior to the time any employee would have been eligible for a three week vacation.

Finally, the contention that Rexall changed its vacation policy to stay competitive is hardly consistent with its own showing that Shell had instituted a "three for five" policy about two years previously.

The fundamental issue here is Rexall's motive—was it pure, or was it to chill unionism? We summarily reject, as unsupportable in the record, the company's contention that it was unaware of union organizational activity and that, therefore, its announcement of economic betterments for its employees was not an unfair labor practice. Nor are we persuaded that Rexall's motivation in the change and announcement of its vacation policy was for valid business considerations unrelated to union organizational activity. Contrarily, we find substantial evidence in the record as a whole to support the Board's finding that the changed and improved vacation policy was for the purpose of discouraging support for the union. The Act "prohibits not only intrusive threats and promises but also conduct immediately favorable to employees which is undertaken with the express purpose of impinging upon their freedom of choice for or against unionization and is reasonaly calculated to have that effect." N.L.R.B. v. Exchange Parts Co., 1964, 375 U.S. 405, at 409, 84 S.Ct. 457, at 460, 11 L.Ed.2d 435; *accord,* Russell-Newman Mfg. Co. v. N.L.R.B., 5 Cir. 1969, 406 F.2d 1280, 1283; N.L.R.B. v. Tidelands Marine Service, Inc., 5 Cir. 1964, 339 F.2d 291, 293.

The Board has said that the timing of the decision as well as the timing of the announcement of a new vacation plan by the company, vis-a-vis the union organizational activity, was of crucial significance in determining the question of the true purpose and therefore the lawfulness of the employer's actions. We agree. "The danger inherent in well-timed increases in benefits is the suggestion of a fist inside the velvet glove. Employees are not likely to miss the inference that the source of benefits now conferred is also the source from which future benefits must flow and which may dry up if it is not obliged." N.L.R.B. v. Exchange Parts Co., *supra,* 375 U.S. at 409, 84 S.Ct. at 460.

It is axiomatic that a determination of § 8(a) (1) violations depends "upon the facts and circumstances of each individual case and our inquiry must be directed to the evidentiary basis for the order of the Board." N.L.R.B. v. Harbison-Fischer Mfg. Co., 5 Cir. 1962, 304 F.2d 738, at 740. Our review of the authorities relied upon by Rexall convinces us that they are factually inapposite. Moreover, the historical absence of employer interference and restraint, pressed upon us by the company, is not relevant "when as here the motive is otherwise established, [for] an employer is not free to violate § 8(a) (1) by conferring benefits simply because it refrains from other, more obvious violations." N.L.R.B. v. Exchange Auto Parts, *supra* at 410, 84 S.Ct. at 460.

Enforced.