**Thomas VECCHIONE, Jr., Plaintiff,**

v.

**UNITED TELEPHONE COMPANY, Defendant.**

No., C 80–545 Y.

United States District Court, N.D. Ohio, E.D.

April 13, 1984.

David Roloff, Green, Schiavoni, Murphy, Haines & Sgambati Co., L.P.A., Youngstown, Ohio, for plaintiff.

Eugene B. Schwartz, Gregory P. Szuter, Schwartz, Einhart & Simerka, Cleveland, Ohio, for defendant United Telephone Co.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This is an action pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, in which plaintiff Thomas Vecchione, Jr. claims that he was wrongfully discharged from employment by defendant United Telephone Company (United Telephone). Defendant United Telephone has filed a motion to dismiss the complaint or in the alternative for summary judgment. Failing these two motions, United Telephone seeks to join, or dismiss for failure to join, a party defendant. As defendant's motion presents matters outside of the pleadings, this motion will be treated as one for summary judgment.

On January 17, 1978, while on his way to work, plaintiff allegedly fell in defendant United Telephone's snow-covered employee parking lot. After reporting to his immediate supervisor, plaintiff went to the hospital for treatment. An accident report was received by United Telephone on January 20, 1978. For the next few weeks, plaintiff made weekly phone calls to a superior at defendant's place of business, until he was told to stop. On February 9, defendant's personnel office wrote to the plaintiff requesting medical information which had not been provided.

At all times after the alleged fall, plaintiff failed to return to work. Plaintiff did continue to have discussions with his supervisors, and requested a leave of absence. He was informed that an official higher up in management would have to be consulted, as plaintiff had a work history of absenteeism.

On February 23, defendant informed the plaintiff by letter that based on their having received no information on plaintiff's status, defendant was assuming that plaintiff had voluntarily quit as of February 20, 1978. This letter was received by plaintiff on March 1. However, no formal termination letter was ever sent to the plaintiff, and plaintiff has consistently stated that he did not quit.

At all times pertinent to these events, plaintiff was a member of Local Union 1996 of the International Brotherhood of Electrical Workers. The Local was the exclusive bargaining agent for the plaintiff, and had entered into a collective bargaining agreement with defendant United Telephone.

That agreement provided for a three step grievance procedure, with discharge being grounds for an immediate step-three proceeding. Step-three called for a meeting between the Local and the defendant, with defendant's answer to the grievance due seven days thereafter. If the step-three proceedings should fail to obtain satisfactory results, a notice of arbitration was to be served by the dissatisfied party within thirty days after the last written answer.

Initially, a fact-finding meeting between the Local and United Telephone, concerning the plaintiff, was set up. At this meeting, the Local and plaintiff argued that plaintiff had not quit and was requesting a leave of absence. Defendant United Telephone repeated its position that the plaintiff had effectively quit, based on his failure to appear at work and to supply required medical information to the defendant.

At or about the same time as this meeting, the defendant notified the plaintiff that it was opposing plaintiff's worker's compensation claim. The Local then determined that by obtaining a favorable worker's compensation decision, plaintiff would have a better chance of being reinstated. This opinion was communicated to the plaintiff.

When the worker's compensation hearing was postponed, due to plaintiff's absence, the union determined that it should proceed with filing a step-three grievance. This was filed on May 19, 1978, requesting reinstatement to leave of absence status. The step-three meeting was held on May 28, 1978. The defendant's written reply letter, denying the grievance, was issued on June 1, 1978.

The grievance was then submitted to the Local's Executive Board for an opinion. On or about June 14, the Executive Board concluded that if the grievance were arbitrated, there was a good possibility that plaintiff would not be reinstated. Instead, the Board thought it best to wait for a determination on plaintiff's compensation claim by the Industrial Commission. It was theorized that if the Industrial Commission granted the claim, plaintiff's claim that he was still an employee would be supported and the Local would be in a better position to file a new grievance at that time.

Subsequently, plaintiff's co-workers requested a special meeting of the Local, so that the executive board could explain their decision not to arbitrate. After discussing this matter, the members, or a large majority of the members, concurred with the Board's decision. No further action was taken with respect to the plaintiff's grievance.

On April 10, 1980, plaintiff filed this action against United Telephone. No action was taken against the Union. Plaintiff's complaint and amended complaint, however, do allege unfair representation on the part of the Union, resulting in the loss of the opportunity to arbitrate plaintiff's grievance.

Defendant United Telephone's motion for summary judgment is premised on the contention that plaintiff's claim is time barred under the United States Supreme Court's recent decision in *DelCostello v. International Brotherhood of Teamsters,* — U.S. —, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Plaintiff contends that this action was timely filed under the appropriate limitation period, or in the alternative that the time limitation for claims of this kind, adopted in *DelCostello,* is not to be applied retroactively. Plaintiff also maintains that defendant failed to assert the *DelCostello* statute of limitations and, therefore, the Court is precluded from considering this statute of limitations. Alternatively, plaintiff argues that whatever statute of limitation the Court applies has been tolled by the activity, or inactivity, of the Union on behalf of the plaintiff.

I.

Initially, this Court must determine what statute of limitations applies to this action. With Congress having failed to provide a statute of limitations for § 301, the Supreme Court held that "the timeliness of a § 301 suit, ... is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." *Auto Workers v. Hoosier Cardinal Corporation,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966). Expanding on what state statute of limitations would be appropriate, the Court held that state limitation statutes for vacating arbitration awards were applicable in § 301 actions which had gone through arbitration. *United Parcel Service, Inc. v. Mitchell,* 451

U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981).

Subsequently, the Sixth Circuit Court of Appeals held that this interpretation extended to § 301 actions whether or not arbitration had actually taken place. *Badon v. General Motors Corp.*, 679 F.2d 93 (6th Cir.1982).

> Unlike Badon's complaint, Mitchell's grievance had been submitted to arbitration. We do not, however, feel that this difference distinguishes the underlying rationale of *Mitchell.*
>
> \*    \*    \*    \*    \*    \*
>
> Accordingly, where an employer's decision has become final through the operation of the collectively bargained-for private system of dispute resolution, the rule of *Mitchell* applies and the state statute of limitations pertaining to the vacation of arbitration awards will be utilized in subsequent federal court proceedings.

*Id.* at 98.

*Badon*, applying Michigan law, found no applicable state statute, and so determined that the most appropriate statute of limitations was the six-month period provided in § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b). *Id.* at 99.

In Ohio, the appropriate statute of limitations under *Mitchell-Badon* could be found in the three month limitation period for actions to vacate arbitration awards. Ohio Rev.Code § 2711.13 provides in pertinent part:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is delivered to the parties in interest, as prescribed by law for service of notice of a motion in an action. For the purposes of the motion, any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

Ohio Rev.Code Ann. § 2711.13 (Page).

In *DelCostello v. International Brotherhood of Teamsters, supra,* however, the Supreme Court reviewed the proper application of the statute of limitations in § 301 suits which allege wrongful discharge and unfair representation. There, the Court noted that turning to state statutes for limitations periods can result in undue delay in resolving these actions.

What we said in *Mitchell* about the six-year contracts statute urged there can as easily be said here:

> "It is important to bear in mind the observations made in the *Steelworkers Trilogy* that 'the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. . . . The processing . . . machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.' *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581 [80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409] (1960). Although the present case involves a fairly mundane and discrete wrongful-discharge complaint, the grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective-bargaining agreement affecting the entire relationship between company and union. . . . This system, with its heavy emphasis on grievance, arbitration, and the 'law of the shop,' could easily become unworkable if a decision which has given 'meaning and content' to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as [three] years later." 451 U.S., at 63–64.

—— U.S. at —— – ——, 103 S.Ct. at 2292–93, 76 L.Ed.2d at 491–92.

Alternatively, extremely short state statutes of limitations can provide undue hardship to aggrieved plaintiffs.

> In the labor setting, by contrast, the employee will often be unsophisticated in collective-bargaining matters, and he will

almost always be represented solely by the union. He is called upon, within the limitations period, to evaluate the adequacy of the union's representation, to retain counsel, to investigate substantial matters that were not at issue in the arbitration proceeding, and to frame his suit. Yet state arbitration statutes typically provide very short times in which to sue for vacation of arbitration awards. Concededly, the very brevity of New York's 90-day arbitration limitations period was a major factor why, in *Mitchell,* we preferred it to the six-year statute for breach of contract, 451 U.S., at 63–64 [101 S.Ct. at 1564–1565]; but it does not follow that because six years is too long, 90 days is long enough. See also *Hoosier,* 383 U.S., at 707, n. 9 [86 S.Ct. at 1114, n. 9]. We conclude that state limitations periods for vacating arbitration awards fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under § 301 and the fair representation doctrine.

—— U.S. at —— - ——, 103 S.Ct. at 2291, 76 L.Ed.2d at 489–90 (footnotes omitted).

In balancing the respective interests of the parties, including the public interest in the speedy resolution of labor disputes, the Court concluded that state limitations periods for vacating arbitration awards are inappropriate in § 301 actions such as this. "We conclude that state limitations periods for vacating arbitration awards fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under § 301 and the fair representation doctrine." *Id.* —— U.S. at ——, 103 S.Ct. at 2291, 76 L.Ed.2d at 490 (footnote omitted). Instead, the court held that § 10(b) of the NLRA provides a fair statute of limitations in these actions. The Court reiterated a part of Justice Stewart's concurring opinion in *Mitchell, supra:*

In § 10(b) of the NLRA, Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as

an unjust settlement under the collective-bargaining system. That is precisely the balance at issue in this case. The employee's interest in setting aside the "final and binding" determination of a grievance through the method established by the collective-bargaining agreement unquestionably implicates "those consensual processes that federal labor law is chiefly designed to promote the formation of the ... agreement and the private settlement of disputes under it." *Hoosier,* 383 U.S., at 702 [86 S.Ct. at 1111]. Accordingly, '[t]he need for uniformity" among procedures followed for similar claims, *ibid.,* as well as the clear congressional indication of the proper balance between the interests at stake, counsels the adoption of § 10(b) of the NLRA as the appropriate limitations period for lawsuits such as this. 451 U.S., at 70–71 [101 S.Ct. at 1567–1568] (opinion concurring in the judgment) (footnote omitted).

—— U.S. at ——, 103 S.Ct. at 2294, 76 L.Ed.2d at 493.

Plaintiff urges that this Court adopt the Ohio two-year statute of limitations for personal injury and injury to personal property, Ohio Rev.Code § 2305.10, or alternatively the six-year limitations period for actions based upon a statute, Ohio Rev. Code § 2305.07, as the appropriate limitations period for this action.

■ In light of the opinion in *DelCostello,* it is clear that the six-month statute of limitations of § 10(b) of the NLRA is the applicable statute of limitations in this action.

## II.

■ Plaintiff argues that *DelCostello* cannot be considered because defendant did not raise *DelCostello,* but raised Ohio Rev. Code § 2711.13. The Court notes that the defendant immediately brought the *DelCostello* decision to this Court's attention shortly after that case was decided. It cannot, therefore, be said that defendant failed to raise this statute of limitations.

Furthermore, defendants' original reliance on Ohio Rev.Code § 2711.13 was raised in response to plaintiff's amended complaint. "In pleading to a preceding pleading, a party shall set forth affirmatively ... statute of limitations ... and any other matter constituting an avoidance or affirmative defense." Fed.R.Civ.P. 8(c). Here, defendant's affirmative defense was properly pled in response to a preceding pleading. Additionally, in a memorandum opinion and order dated May 3, 1983, this Court granted plaintiff leave to amend his complaint. Defendant's motion to amend its answer to raise the statute of limitation was thereby mooted, as the Court recognized the defendant's right to respond to plaintiff's supplemental pleading. Fed.R.Civ.P. 15(d). Thus, defendant has timely raised the statute of limitations as an affirmative defense.

### III.

■ Plaintiff next argues that the six-month statute of limitations of § 10(b) of the NLRA, as applied in *DelCostello*, is inapplicable to this action as the decision in *DelCostello* is not to be given retroactive effect. In support, plaintiff relies upon *Pitts v. Frito-Lay, Inc.*, 700 F.2d 330 (6th Cir.1983). In *Pitts*, the United States Court of Appeals for the Sixth Circuit addressed the issue of retroactive application of its earlier decision in *Badon*, and held that the six-month statute of limitations adopted in *Badon* should not be given retroactive effect.

*Pitts* was decided before *DelCostello*. *DelCostello* and its aftermath strongly suggest that the six-month statute of limitations adopted in *DelCostello* should apply retroactively. First, the Supreme Court itself in *DelCostello* remanded for the retroactive application of the § 10(b) statute of limitations. Next, a vast majority of circuit courts have either specifically, or impliedly, applied *DelCostello* retroactively. *See, Assad v. Mt. Sinai Hospital*, 725 F.2d 837, 115 LRRM 2481 (2nd Cir.1984); *Perez v. Dana Corp.*, 718 F.2d 581 (3d Cir.1983); *Murray v. Branch Motor Express Co.*, 723

F.2d 1146 (4th Cir.1983); *Edwards v. Sea Land Service, Inc.*, 720 F.2d 857 (5th Cir. 1983); *Ernst v. Indiana Bell Telephone Co., Inc.*, 717 F.2d 1036 (7th Cir.1983); *Wilcoxen v. Kroger Food Stores*, 723 F.2d 626 (8th Cir.1983); *Rogers v. Lockheed-Georgia Co.*, 720 F.2d 1247 (11th Cir.1983).

The Sixth Circuit, in a post-*DelCostello* case, has also indicated, in *dicta*, that *DelCostello* would be given retroactive effect where that case is applicable. *See, Curtis v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 299*, 716 F.2d 360 (6th Cir.1983). Furthermore, the Sixth Circuit recognized the retroactive application of *DelCostello* in its recent decision in *Brain v. Roadway Express*, 720 F.2d 678 (6th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984). In *Brain*, the District Court had held that the plaintiff had not filed his complaint within the applicable Ohio statute of limitations as dictated by *Mitchell*. *Brain v. Roadway Express*, No. C 80–2338 (N.D. Ohio 1981). During the interim of appeal, *DelCostello* was handed down. The Court of Appeals in *Brain* affirmed the District Court's decision, but based its affirmation on the retroactive application of *DelCostello*.

The rationale behind retroactive application of the *DelCostello* holding has been thoroughly discussed in many of the above cited cases, and this Court sees no need to repeat that substantial discussion here. *See, Edwards* and *Rogers, supra*.

The Ninth Circuit however has not applied § 10(b) retroactively in a post-*DelCostello* § 301 case. *McNaughton v. Dillingham Ship Repair*, 722 F.2d 1459, 115 LRRM 2407 (9th Cir.1984). That case is clearly at odds with the rationale expressed in other circuits.

This Court is aware that the authorities relied upon by both parties to this claim involve § 301 actions against an employer for wrongful discharge and against a union for unfair representation, and that this case is brought solely against an employer. The distinction as to limitation periods, however, is irrelevant inasmuch as the

same proofs are required in each circumstance.

In order to prevail against an employer or a union, a plaintiff alleging wrongful discharge under § 301 and unfair representation on the part of his Union, ... " ' "must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." ' *Mitchell*, 451 U.S., at 66–67, 101 S.Ct. at 1565–1566 (Stewart, J., concurring in the judgment), quoting *Hines* [*v. Anchor Motor Freight* ], 424 U.S., [554] at 570–571 [96 S.Ct. 1048 at 1059, 47 L.Ed.2d 231]." *DelCostello, supra* — U.S. at ——, 103 S.Ct. at 2290, 76 L.Ed.2d at 489. The plaintiff, however, may choose to file suit against only an employer, as in the case presently before the Court. "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Id.* — U.S. at ——, 103 S.Ct. at 2291, 76 L.Ed.2d at 489. *See, Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

As the plaintiff may choose against whom to seek redress, but must still plead and prove the same case no matter who is named as a defendant, it follows that the same limitations period should be applied no matter how a plaintiff chooses to bring his claim. Any other determination would provide plaintiffs in these suits with the opportunity to shop for longer limitation periods by filing against only employers where applicable state limitation periods would provide greater time frames in comparison to § 10(b) of the NLRA.

Thus, this Court holds that the six-month statute of limitations of § 10(b) of the NLRA applies to the claim before the Court. Defendant's grievance answer was issued on June 1, 1978. As the Local had thirty days within which to respond to the defendants step-three grievance answer by serving a notice of arbitration, as per the collective bargaining agreement, but failed to do so, plaintiff had six months from July 1, 1978 within which to file suit on this grievance. Plaintiff filed his complaint over 15 months after the expiration of the limitations period, and summary judgment would be appropriate unless the statute of limitations was tolled, or plaintiff is relying on some other grievance as the basis for his claim.

IV.

Plaintiff argues that if *DelCostello* applies to his claim, the running of the six-month statute of limitations has been tolled either by the Local's belief that it could have more successfully brought a grievance after the Industrial Commission's ruling on plaintiff's workers' compensation claim or by the Local's failure to notify the plaintiff that it had filed and then dropped its original grievance.

■■■ In general, a statute of limitations may be tolled until such time as "the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." *N.L.R.B. v. Allied Products Corp., Richard Brothers Division*, 548 F.2d 644 (6th Cir.1977) *on remand*, 230 N.L.R.B. No. 121, 79 LRRM 1221 (1977), *enforced*, 629 F.2d 1167 (6th Cir.1980), quoting *HungerFord v. United States*, 307 F.2d 99, 102 (9th Cir.1962) as quoted in *Jordan v. United States*, 503 F.2d 620, 622 (6th Cir.1974). *See also, Modin v. N.Y. Central Co.*, 650 F.2d 829 (6th Cir.1981). In *Allied Products, supra*, the Court applied such a standard to the § 10(b) statute of limitations:

> The Board has consistently held, with the endorsement of at least two circuits, that the six month limitation period does not begin to run until the employer's unlawful activity, which is the basis for the unfair labor practice charge, has become known to the charging party. *Russell-Newman Mfg. Co.*, 167 N.L.R.B. No. 156 (1968), enforced, 406 F.2d 1280 (5th Cir. 1969); *N.L.R.B. v. Shawnee Industries, Inc.*, 333 F.2d 221, 224 (10th Cir.1964). This is only a specific application of the general rule. . . .

548 F.2d at 650. Thus, if plaintiff knew or should have reasonably known that a griev-

ance had been filed on his behalf, or that the Local was not going to follow through on its proposed post-Industrial Board determination grievance, the statute of limitations began to run at that moment. Based on the pleadings and documentation submitted to this Court, however, there exist questions of material fact concerning the following: 1) whether plaintiff discovered or should have discovered the Local's filing of a grievance; and 2) at what point in time plaintiff discovered or should have reasonably discovered that the Local did not intend to fulfill its promise to initiate a grievance following a favorable determination by the Industrial Commission with respect to plaintiff's workers' compensation claim.

Accordingly, defendant's motion for summary judgment is denied. Defendant's motion to join the Union as a necessary party has been previously raised on two occasions, and this Court has denied both of those motions. Nothing has been presented to this Court in the present motion which would alter its prior decisions, and the defendant's motion is once again denied. Defendant's motion to dismiss for non-joinder of a party is also denied. Defendant will be permitted an additional fourteen (14) days to respond to the complaint.

IT IS SO ORDERED.