NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

McCANN STEEL COMPANY, Inc.,
Respondent.

No. 21045.

United States Court of Appeals,
Sixth Circuit.

Sept. 14, 1971.

Judith Wilkenfeld, N. L. R. B., Washington, D. C., (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Edward P. Wendel, Attys., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Charles H. White, Nashville, Tenn., (Charles Hampton White, Charles G. Cornelius, Cornelius, Collins, Higgins & White, W. Gordon McKelvey, Nashville, Tenn., on the brief), for respondent.

Before PECK, MILLER and KENT, Circuit Judges.

JOHN W. PECK, Circuit Judge.

The NLRB petitions for enforcement of its order finding the respondent in violation of § 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., for threats uttered before the union representation election, and § 8(a) (1), (3), and (5) for unilaterally reducing, the day after the union won the election, the Christmas bonuses it paid to its workers.

## THE § 8(a) (1) VIOLATIONS

On July 2, 1969, the Shopmen's Local Union No. 733 of the International Association of Bridge, Structural, and Ornamental Iron Workers, AFL–CIO (the union) filed a petition for an election in a unit of production and maintenance employees of respondent (the company). The record leaves little doubt that the company was not pleased with the prospect of unionization, and sought to preclude that possibility. In so doing, the Board charges, the company violated § 8 (a) (1) in several instances of intimidation, interrogation, and threats about the forthcoming election.

■ The first of these instances concerned a conversation between John McCann (Chairman of the Board of the company), Logan Hicks (the shop superintendent) and Brady Kelley, a cleanup man. The conversation was testified to by Ivey Smith, a clerk in the shipping and receiving department of the company. According to Smith, McCann asked Kelley about his attendance at the union meeting, and inquired whether he knew who else had attended that meeting. Kelley said he did not know if he could point out the persons who had attended, but that he would attempt to do so from a list of employees. According

to Smith, whom the trial examiner credited, one of the two management personnel went to seek a list, and was in the process of returning to the group when Smith left. Kelley was not called to testify by either side; both McCann and Hicks denied the conversation ever occurred. Bound as we are by the trial examiner's credibility findings, Keener Rubber, Inc. v. N. L. R. B., 326 F.2d 968, 970 (6th Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1337, 12 L.Ed.2d 297 (1964), we must find that such interrogation violated organizational rights under § 8 (a) (1). N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed. 2d 547 (1969); N. L. R. B. v. Electric Steam Radiator Corp., 321 F.2d 733 (6th Cir. 1963).

■ A second incident, again found to be a § 8(a) (1) violation, was a remark made by McCann, again to Logan Hicks, and again in the presence of Ivey Smith, that if the union won the election, he would make it "hard as hell on them." This, the Board concluded, was a threat and coercion under the Act. Our review of the record, however, leads us to conclude that there is no substantial evidence to support this finding. The remark was not made to Smith, but to Hicks, a supervisor, and was overheard by Smith. In this setting, the law seems clear that the Board must demonstrate that the remarks were made with some intent that they be overheard. Colecraft Manufacturing Co. v. N. L. R. B., 385 F.2d 998 (2d Cir. 1967). No such showing has been made here. There is nothing in the record to indicate the size of the office in which the overheard conversation occurred, or of the proximity of the speakers to Smith. Moreover, Smith testified that he did not hear most of the conversation because "I was in and out a lot." This does not, in our view, lend sufficient support to the implied finding by the Board that the statement was intended to be heard by Smith. In Colecraft, supra, two supervisors were discussing the effect of unionization when they were overheard by passing employees. The

court refused to enforce the finding of a § 8(a) (1) violation, declaring:

"Prerequisite to charging an employer for the remarks of its supervisory employees is a finding that the workers would have just cause for believing that the supervisors were acting for or on behalf of their employer." 385 F.2d 998, 1004.

We concur in that rationale and apply it here. Since there was no basis on which employee Smith could justifiably infer that the conversation was meant for his ears, whatever effect it had upon him was not the result of a volitional act by the company.

Two other § 8(a) (1) violations are urged. The first involved company president Charles McCann's statement to several workers, whom he had called in for a discussion, that competitors who had been unionized were paying lower wages, and that there was a good possibility that some people in the bargaining unit would have to accept pay cuts. The trial examiner found a violation, and the Board underscored this by asserting it to be unlawful interrogation. The second violation occurred after the election, at which time Hicks commented to two employees, "there goes the Christmas bonus."

There is substantial evidence in the record to support these findings and, while we find the last statement to be *de minimis*, since we have found other § 8(a) (1) transgressions we see no reason to consider in depth the independent aspects of these two incidents.

### THE CHRISTMAS BONUS VIOLATIONS

Supervisor Hicks was right. The Christmas bonus which had been steadily increasing in the company for the past several years, until it had reached a level of nearly $150 per man, was drastically reduced on pay day (the day following the election) to one day's pay, approximately $20. The Board found, and there is substantial evidence supporting the finding, that this drastic reduction in the Christmas bonus was retaliation for the election vote the day before. Such action violates both § 8(a) (1) and (3) of the Act, and we have so held in the past. Beacon Journal Publishing Co. v. N. L. R. B., 401 F.2d 366 (6th Cir. 1968). See also N. L. R. B. v. Dothan Eagle, Inc., 434 F.2d 93 (5th Cir. 1970); N. L. R. B. v. May Aluminum, Inc., 398 F.2d 47 (5th Cir. 1968). *Cf.* N. L. R. B. v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). *Dothan Eagle* is precisely on point, because there, as here, another unit, which was non-unionized, was given virtually the same bonus as in past years. The Fifth Circuit's response there is ours here: "Such discrimination between union and non-union personnel cannot be tolerated." 434 F.2d at 99.

Finally, the Board found that this reduction of the bonus, one day after the election of the union, constituted a refusal to bargain, in violation of § 8(a) (5). The company's argument that the union had not yet been certified is unavailing; the Board's order will be enforced on this point. See King Radio Corp. v. N. L. R. B., 398 F.2d 14 (10th Cir. 1968); N. L. R. B. v. Laney and Duke Storage Warehouse Co., 369 F.2d 859 (5th Cir. 1966). See also N. L. R. B. v. Zelrich Co., 344 F.2d 1011 (5th Cir. 1965).

Order enforced in part and denied in part.