**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ALLIED PRODUCTS CORPORATION, Richard Brothers Division, Respondent.**

**No. 75–2124.**

United States Court of Appeals, Sixth Circuit.

Argued April 16, 1980.

Decided Sept. 4, 1980.

Elliott Moore, Paul Spielberg, Richard Cohen, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., Bernard Gottfried, Director, Region 7, N. L. R. B., Detroit, Mich., for petitioner.

Richard L. Marcus, Adams, Fox, Marcus & Adelstein, Scott A. Lathrop, Deborah Devaney, Chicago, Ill., for respondent.

Before EDWARDS, Chief Judge, and WEICK and MERRITT, Circuit Judges.

EDWARDS, Chief Judge.

This is the second consideration by this court of the remedy ordered by the National Labor Relations Board for a violation by respondent of Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (5) (1976).[1] The violation found by the Board occurred in the spring of 1974 after the union[2] had won a consent election in a unit of 10 clerical employees at the company's Hillsdale, Michigan plant.

On the heels of the union's victory in the representation election and the rejection by the Regional Director of the respondent's objections to the election, respondent unilaterally suspended an established yearly compensation review and increase program applicable to the office employees.

The Administrative Law Judge found that respondent had violated §§ 8(a)(1) and (5) of the Act by unilaterally suspending the merit wage review or increase program. He did not, however, recommend a remedy which would have had the effect of making the employees whole. The NLRB, without being specifically urged to do so by the general counsel, did enter an order requiring the reinstitution of the merit wage review and/or wage increase program applied retroactively from on or about May 3, 1974. The Board's rationale for this order was as follows:

"The Administrative Law Judge, although finding that Respondent unilaterally suspended its merit review program without prior notice to, or consultation with, the Union, concluded that neither a restoration of the *status quo ante* nor a make–whole remedy was warranted herein because Respondent and the Union subsequently discussed this subject during negotiations. He therefore recommended that Respondent be required only to cease and desist prospectively from unilaterally discontinuing the merit review program. However, in cases, like here, involving a violation of Section 8(a)(5) based on a respondent's unilaterally altering existing benefits, it is the Board's established policy to order restoration of the *status quo ante* to the extent feasible, and in the absence of evidence showing that to do so would impose an undue or unfair burden upon the respondent.[1] We find no basis here which

[1] See, e. g., *American Smelting and Refining Company*, 167 NLRB 204 (1967); *Southland Paper Mills, Inc.*, 161 NLRB 1077, 1078 (1966).

to the provisions of section 159(a) of this title.
29 U.S.C. §§ 158(a)(1), (5) (1976).

[2] Local 701, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW).

---

[1] Sections 8(a)(1) and (5) of the NLRA provide:
(a) It shall be an unfair labor practice for an employer
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
(5) to refuse to bargain collectively with the representatives of his employees, subject

justifies a departure from this policy. Thus, contrary to the Administrative Law Judge, the fact that Respondent presented the Union with a *fait accompli* at the outset of negotiations must necessarily have obstructed meaningful bargaining.[2]

[2] *N.L.R.B. v. Katz, et al. d/b/a Williamsburg Steel Products Co.*, 369 U.S. 736, 747, 82 S.Ct. 1107, 1113, 8 L.Ed.2d 230 (1962).

To hold that bargaining in such circumstances is an adequate substitute for remedial action would unwarrantedly relieve Respondent of its statutory obligation to maintain existing benefits during negotiations and unjustifiably ignore the rights of those employees who may have been adversely affected by Respondent's breach of that duty. Furthermore, the record discloses no evidence establishing that an order restoring the *status quo ante* here would impose an unfair burden upon Respondent. We therefore conclude that the recommended Order of the Administrative Law Judge falls short of effectively remedying Respondent's unlawful conduct.

"In view of the foregoing, we find that it will best effectuate the purposes of the Act to order Respondent to reinstitute its former merit wage review program and to apply it retroactively from on or about May 3, 1974, the date on which Respondent first gave unequivocal notice to the Union of its decision to suspend that program pending negotiations.[3] In further-

[3] In fashioning this remedy, we also particularly note that the allegation of the complaint

with respect to Respondent's unilateral suspension of its merit wage review program is limited to events occurring since on or about May 3, 1974.

ance of this remedy, we shall also specifically order Respondent to make its employees in the bargaining unit whole by paying them the differences, if any, between their actual wages and the wages they would have received had the merit review program not been suspended during such period, together with interest thereon at the rate of 6 percent per annum, as set forth in *Isis Plumbing & Heating Co.*, 138 NLRB 716 (1962).[4] Ac-

[4] Cf. *General Motors Acceptance Corporation*, 196 NLRB 137, 145 146 (1972).

cordingly, we shall modify the recommended Order of the Administrative Law Judge to conform herewith."

At the original hearing before this court there were major issues other than the remedy issue. See *NLRB v. Allied Products Corp., Richard Bros. Div.*, 548 F.2d 644, 646–653 (6th Cir. 1977). On two of these issues, this court reversed the Board. We held that two secretaries whom the Board had included in the clerical bargaining unit were "confidential" employees and, hence, subject to exclusion from the bargaining unit. The second issue pertained to the question of the date on which the six months' limitation on the filing of an unfair labor practice charge commenced under § 10(b) of the Act.[3]

3. Section 10(b) of the National Labor Relations Act provides:

(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made*, unless the person aggrieved thereby was prevented from filing such charge by reason of

service in the armed forces, in which event the six month period shall be computed from the day of his discharge. Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon. The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint. In the discretion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony. Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district court of the United States under the rules of civil procedure for the district courts of the

The company took the position that the operative date was March 28, 1974, when the "by–pass" of one employee for wage review was first discussed at a union meeting. Under this construction of the record the unfair labor charges would be time barred.

The Administrative Law Judge had found that the union knew well before April 7 that the company was discontinuing the wage review practice. The Board took the point of view, however, that the operative date was May 3, 1974 because the by–pass policy was reiterated on that date and was properly to be construed as a continuing violation.

Our court's majority opinion, written by Judge McCree, found that the Administrative Law Judge and the Board were in error in charging the union with knowledge before April 7 "that the Company had decided as a matter of policy to discontinue its established practice of conducting wage reviews of all employees." *NLRB v. Allied Products Corp., Richard Bros. Div.*, 548 F.2d 644, 651–652 (1977).

This court's earlier opinion also held:

"It is settled law that an employer may not unilaterally change its employees' wages or other working conditions when it is subject to the statutory duty to bargain with a designated representative of it employees. *N.L.R.B. v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); *N.L.R.B. v. McCann Steel Co.*, 448 F.2d 277 (6th Cir. 1971). The Company does not contest this basic rule. It does contend, however, that because the change was not made for anti–union reasons, there was no violation. Second, the Company contends that because it might have been held to have violated the law had it either granted or denied merit increases during negotiations, it should not be penalized for a 'good faith' attempt to comply with an inherently inconsistent rule. Finally, the Company urges us to rule that because it made its

unilateral change before the Union had been certified, there could have been no § 8(a)(5) violation.

"The Company's first two arguments depend upon an erroneous interpretation of the rule against unilateral changes and of the policies upon which that rule is founded. Proof of violation of § 8(a)(5) by showing unilateral changes may not be rebutted by proof of the employer's good faith or of the absence of anti–union animus. We believe that the Company's argument is squarely refuted by *Katz*:

Clearly, the duty thus defined may be violated without a general failure of subjective good faith; for there is no occasion to consider the issue of good faith if a party has refused even to negotiate *in fact* –'to meet . . . and confer'–about any of the mandatory subjects. A refusal to negotiate *in fact* as to any subject which is within § 8(d), and about which the union seeks to negotiate, violates § 8(a)(5) though the employer has every desire to reach agreement with the union upon an over–all collective agreement and earnestly and in all good faith bargains to that end. We hold that an employer's unilateral change in conditions of employment under negotiation is similarly a violation of § 8(a)(5), for it is a circumvention of the duty to negotiate which frustrates the objectives of § 8(a)(5) much as does a flat refusal. 369 U.S. at 736, 82 S.Ct. at 1111.

The fact that the Company offered to discuss *re–institution* of the merit increase does not mitigate its violation by unilaterally *discontinuing*, without negotiation with its employees' representative, the established merit review procedure.

"Nor is the Company's argument, that it has 'been caught between the devil and the deep blue sea,' sound. It is correct that in some circumstances it will be an unfair labor practice to grant unilaterally

United States, adopted by the Supreme Court of the United States pursuant to section 2072 of Title 28. (Emphasis Added).

29 U.S.C. § 160(b) (1976).

a wage increase, *e. g.*, *N.L.R.B. v. Katz, supra,* and that in other circumstances it will be an unfair labor practice to deny unilaterally a wage increase, *e. g.*, *N.L.R.B. v. 'Southeastern Michigan Gas Co.,* 485 F.2d 1239 (6th Cir. 1973). The Act is violated by a unilateral *change* in the existing wage structure whether that change be an increase or the denial of a scheduled increase. Because the Company unilaterally *changed* an existing condition of employment, instead of maintaining the status quo, the Board properly found that it had committed an unfair labor practice.

"Finally, we do not agree that an employer may freely make unilateral changes until a union has been certified as the bargaining representative of its employees. In *N.L.R.B. v. McCann Steel Co.,* 448 F.2d 277 (6th Cir. 1971), our circuit decided that the fact that an established Christmas bonus was reduced only one day after the election of the union, but before certification, did not negate violation of § 8(a)(5).[6] If the employer relies on the contention that the election was invalid when making unilateral changes,

[6] *Cf. King Radio v. N.L.R.B.,* 398 F.2d 14 (10th Cir. 1968): the proper way to raise objections to certification after an election is to refuse to bargain and to object to the Board's petition for enforcement of the order based on the refusal to bargain on the ground that certification was improper.

it does so at its own risk. If it successfully proves the election was invalid it will not be ordered to bargain . . . . But if it is unsuccessful an order by the Board based on the refusal to bargain will be enforced.

*N.L.R.B. v. Laney & Duke Storage Warehouse Co.,* 369 F.2d 859, 869 (5th Cir. 1966).

It is the election—the choice of the union as the employees' bargaining representative—that gives rise to the employer's duty to bargain. An employer's objections to certification do not relieve it of that duty."

*NLRB v. Allied Products, supra,* 652–653.

Having thus determined violation, this court in its prior consideration of this case

went on to reject the company's arguments that the remedy ordered by the Board was improper because the general counsel had not filed an exception to the failure of the ALJ to enter a make–whole order. The court's opinion pointed out, among other things, that the "company never offered the Board an opportunity to rule on those contentions" by filing a motion for reconsideration, which under the Board's rules must be founded upon "extraordinary circumstances." This court's opinion held:

"We do not believe that the statutory 'extraordinary circumstances' are present in this case. The Board's regulations, 29 C.F.R. § 102.48(d)(1) provide,

A party to a proceeding before the Board may, because of extraordinary circumstances, move for reconsideration, rehearing or reopening of the record after the Board decision or order.

"In both the statute and the regulation, the term 'extraordinary circumstances' has the same, primarily procedural, meaning. Extraordinary circumstances for these purposes exist only if there has been some occurrence or decision that prevented a matter which should have been presented to the Board from having been presented at the proper time.

"The Company argues that the Board has adopted sua sponte a remedy contrary to Supreme Court holdings, contrary to a statutory provision, and indeed contrary to the Board's own regulations. If that is true, then the fact that the Board acted sua sponte prevented the Company from presenting its arguments against the remedy to the Board before the Board acted. This is exactly the kind of extraordinary circumstances for which the option to move for rehearing or reconsideration is provided. See *Garment Workers v. Quality Mfg. Co.,* 420 U.S. 276, 281 n. 3, 95 S.Ct. 972, 975, 43 L.Ed.2d 189 (1975).

"However, because of the availability of a rehearing before the Board, the Board's sua sponte adoption of the status quo ante remedy is not a *statutory* extra-

ordinary circumstance. Although the sua sponte decision did prevent presentation of the objections to the Board before its decision, it did not prevent their presentation to the Board in a petition for rehearing or reconsideration. Had the Company filed a motion for rehearing, we could have reviewed the application of the Board's expertise to this aspect of the controversy. Because the Company did not so move, we are precluded from considering its objections now."

*Id.* at 653–654.

Obviously, the court's opinion disposed of most of the arguments which have been made to us by the company in its second series of objections to the second petition for enforcement by the Board. These are really belated motions for rehearing of our original opinion and, as such, are of course, rejected.

The final dispute, however, and the only issue properly before us, concerns the question of whether or not the Board had disregarded this court's instruction contained in the last paragraph of our original opinion:

"However, because we have affirmed the Board's order based on a theory of the applicability of the § 10(b) limitations period which differs from that upon which the Board relied, we conclude that the case should be remanded to the Board for reconsideration of the remedy in light of that determination. Of course, both the general counsel and the Company must be afforded an opportunity to present their respective positions to the Board upon such reconsideration."

*Id.* at 654.

We do not find the "disregard" of this court's 1977 opinion about which respondent complains. In its supplemental decision and order, 230 NLRB No. 121 (1977), the Board said:

"However, the court enforced the remainder of the Board's Order, concerning the merit wage review and/or increase program, except that the court declined to enforce the Board's backpay award until the Board had reconsidered the remedy in light of the court's application to the case of a different theory considering the limitations period contained in Section 10(b) of the Act.

"On March 28, 1977, the Board advised the parties that it had decided to accept the remand and that they might submit statements of position with respect to the issue raised by the remand. Thereafter, the General Counsel and Respondent filed statements of position."

Thus, the Board specifically invited the comments of the parties on the remedy issue and received them. After reconsideration of the 10(b) remedy, the Board held:

"In view of our acceptance of the court's finding that the Union did not become aware of Respondent's unlawful conduct until May 3, we agree that the 10(b) limitations period was tolled until then. As the court recognized, the Board has uniformly held that the 6–month limitations period does not begin to run until the injured party has become, or should have become, aware of the respondent's unlawful action. *Russell–Newman Mfg. Co.*, 167 NLRB 1112 (1967), enfd. 406 F.2d 1280 (C.A. 5, 1969); *Alabaster Lime Company, Inc.*, 194 NLRB 1116 (1972). The Board has also decided that where the limitations period has been tolled with respect to the cause of action it is likewise tolled as regards the remedy. *Don Burgess Construction Corporation d/b/a Burgess Construction and Donald Burgess and Verlon Hendrix d/b/a V & B Builders*, 227 NLRB No. 119 (1977).

"Therefore, because the statute of limitations was tolled both as to the cause of action and the remedy in this case until May 3, the charge filed on October 7 was obviously timely. It is thus evident that Respondent should be ordered to reinstate its merit wage review and/or increase program and apply it retroactively from February 27, the date upon which Respondent first passed over an employee entitled to a merit wage review under its established practice, and to make whole the employees in the unit for any loss of wages suffered by reason of the suspension of the program from that date.[6]

[6] Respondent's repetition in its statement of position of the argument it advanced before the court of appeals to the effect that the Board improperly granted affirmative relief *sua sponte* in its original Decision is outside

the scope of the remand. The court in its decision rejected this contention as untimely, and remanded the case to us solely to reconsider the remedy 'in light of' its affirmance of the Board's Order 'based on a theory of the applicability of the § 10(b) limitations period which differs from that upon which the Board relied . . . ." 548 F.2d at 654.

"As the court has already enforced our Order as it pertains to the merit review program, except with respect to the backpay award, our supplemental Order will be limited accordingly."

To summarize, the only issue which was remanded by this court was the remedy issue. That issue was remanded because this court rejected the Administrative Law Judge's and the Board's decision as to when notice of the unfair labor practice was received by the union. The Board held in effect that while notice to the union occurred before May 3 (as found by the ALJ) a continuing violation occurred on May 3. On this theory, it limited the retroactivity of its remedy to that time, namely May 3. This court held from the whole record that the charging party, the union, first received notice of the suspension of the wage view scheme *as a company policy* on May 3, 1974. *NLRB v. Allied Products, supra,* 650–652. Under this view of the facts, of course, the six‑month limitation did not start to run until May 3, 1974.

As a consequence of the remand, the Board expanded its make whole remedy to include those individuals who had been by‑passed before the May 3 date. We believe that the Board's expansion of the remedy is consistent with the Act and is an appropriate response to this court's remand.

Enforcement of the Board's order is granted.

WEICK, Circuit Judge, dissenting:

I adhere to my dissenting opinion filed on January 28, 1977, to the panel's decision reported in 548 F.2d 644 (6th Cir. 1977) for the reasons therein set forth and which were not remedied by the Board on the remand. I would deny enforcement of the Board's order on the remand.

MERRITT, Circuit Judge, concurring.

Petitioner NLRB brings this enforcement action for the second time before this Court. Our Court previously upheld the Board's substantive ruling but remanded for further proceedings. I agree with Judge Edwards that the contentions the Company now raises are beyond the scope of the remand, and thus cannot be litigated now.

In the initial administrative hearing the administrative law judge held that respondent Allied Products violated Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (5), by unilaterally suspending its previously established merit wage review program. The ALJ, however, specifically refused the general counsel's recommendation of a *status quo ante* remedy. Generally, such a remedy awards employees the benefits they would have received had the Company not suspended its review program. The Company then filed objections to the findings of violations.

The Board, without hearing, and without filing exceptions *sua sponte* overruled the ALJ in part. They sought enforcement in this Court of an order requiring the *status quo ante* remedy.

In *NLRB v. Allied Products,* 548 F.2d 644 (6th Cir. 1977), this Court upheld the Board's findings of violations. We refused to rule on two of the Company's objections. The company had argued that the remedy was inappropriate and that the Board violated Section 10(c)[1] and its regulations[2] by

1. Section 10(c), 29 U.S.C. § 160(c), provides in part:

> In case the evidence is presented before a member of the Board, or before an examiner or examiners thereof, such member, or such examiner or examiners as the case may be, shall issue and cause to be served on the parties to the proceeding a proposed report, together with a recommended order, which shall be filed with the Board, and *if no excep-*tions are filed within twenty days after service thereof upon such parties, or within such further period as the Board may authorize, such recommended order shall become the order of the Board* and become effective as therein prescribed (emphasis added).

2. 29 C.F.R. 102.46(b) states in relevant part: "Any exception to a ruling, finding, conclusion or recommendation, which is not specifically

summarily imposing the *status quo ante* remedy.

We noted that the company had failed to raise such objections in a Board proceeding, and there were no extraordinary circumstances that excused this failure. The Company could have filed an objection to the Board's *sua sponte* action by way of a motion for reconsideration, but did not do so. Thus 29 U.S.C. § 160(e)[3] precluded considering these objections.

We also held, however, that under 29 U.S.C. § 160(b) the limitations period had been tolled, and thus started later than the date found by the ALJ. We then remanded for reconsideration of the remedy in light of this last issue.

On remand, the Board extended the remedy to cover violations that occurred during the period for which the statute was tolled. The Board refused, however, to consider the Company's previously stated objections to the proposed remedy. The Board claimed that such inquiry was beyond the scope of our Court's remand. The Company now argues to the contrary.

Fairly read, our Court's opinion does preclude examining the issues the Company now raises. It states:

> However, because we have affirmed the Board's order based on a theory of the applicability of the § 10(b) limitations period which differs from that upon which the Board relied, we conclude that the case should be remanded to the Board for reconsideration of the remedy *in light of that determination.* 548 F.2d at 654 (emphasis added).

I read this to mean that the sole purpose of remand was to determine how back benefits were to be awarded for periods in which the statute of limitations was tolled. Accord-

ingly, I concur with the opinion of my brother, Judge Edwards.

---

urged shall be deemed to have been waived." Section 102.46(h) states: "No matter not included in exceptions or cross examinations may thereafter be urged before the Board, or in any further proceedings."

3. This section provides in part:
> *No objection that has not been urged before the Board,* its member, agent or agency, *shall be considered by the court,* unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances (emphasis added).