NATIONAL LABOR RELATIONS
BOARD, Petitioner,

and

United Mine Workers of America,
Intervenor,

v.

CARBONEX COAL COMPANY,
Cross-Petitioner/Respondent.

No. 80–1739.

United States Court of Appeals,
Tenth Circuit.

May 25, 1982.

---

William Bernstein, Washington, D. C. (William Wachter, Washington, D. C., Atty., of counsel: William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., with him on the brief), for petitioner.

Alex V. Barbour, Chicago, Ill. (Edward B. Miller, Chicago, Ill., Atty., of counsel: Pope, Ballard, Shepard & Fowle, Chicago, Ill., with him on the brief), for cross-petitioner/respondent.

Harrison Combs and Marilyn Townsend, Washington, D. C., for intervenor.

Before McWILLIAMS and McKAY, Circuit Judges, and ANDERSON, Chief District Judge.*

McWILLIAMS, Circuit Judge.

The National Labor Relations Board petitions for enforcement of an order issued against Carbonex Coal Company. 248 NLRB No. 107 (1980). By cross-petition, Carbonex Coal Company asks that, with the exception of the section 8(a)(1) findings, the order of the Board be vacated. We enforce the Board's order.[1]

Carbonex Coal Company is engaged in the mining of coal at various mines in northeastern Oklahoma. One of its mines is the Rogers Mine located in Rogers County, Oklahoma. The present dispute arises out of the efforts of the United Mine Workers of America, intervenor in the present proceeding, to unionize the workers at the Rogers Mine. After an extensive hearing was held before an Administrative Law Judge, it was determined that the Company's efforts to avoid the unionization of its workers by the United Mine Workers constituted violations of sections 8(a)(1), (3), and (5) of the National Labor Relations Act, 29 U.S.C. § 158 (1976).[2]

The Board affirmed the ALJ's findings and conclusions. The Board determined that the Company had engaged in a variety of section 8(a)(1) violations prior to the representation election; had violated section 8(a)(3) and (5) of the Act by laying off employees in a three-week period immediately following the representation election; further had violated section 8(a)(3) of the Act by terminating employees who had participated in an unfair labor practice strike;

had violated section 8(a)(3) and (5) of the Act by subcontracting its truck hauling operations following the representation election; and had violated section 8(a)(5) of the Act by failing to bargain in good faith with the recognized bargaining representative of its employees. To remedy these violations of the Act, the Board ordered, inter alia, that the Company reinstate the laid off and terminated employees with back-pay; that it offer the strikers, upon their unconditional application, immediate and full reinstatement to their former or substantially equivalent positions; that it reestablish its trucking operations; and that it bargain in good faith with the United Mine Workers.

In this Court, the Company does not challenge the Board's finding that, prior to the representation election, the Company violated section 8(a)(1) of the Act by, inter alia, threatening its employees with mine closures if the union won the representation election; interrogating its employees about their union activities; and threatening its employees with job termination because of their pro-union activity. The Company does challenge the findings of the Board relating to events that occurred after the representation election. The Board contends, however, that all critical findings are supported by substantial evidence, and seeks enforcement of the order. We agree with the Board.

The representation election was conducted on June 20, 1978. Out of some 60 employees who were eligible to vote in the representation election, 33 voted in favor of the United Mine Workers of America, and 23 voted against the union.[3] Within a

---

* Hon. Aldon J. Anderson, Chief Judge, U. S. District Court, District of Utah, sitting by designation.

1. We have jurisdiction pursuant to section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) (1976), because Carbonex Coal Company transacts business within this judicial circuit.

2. Section 8(a)(1) of the Act establishes that it is an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of their section 7 rights.

Section 8(a)(3) of the Act provides that "[i]t shall be an unfair labor practice for an employer by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization."

Section 8(a)(5) of the Act states that "[i]t shall be an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees."

3. There was no dispute about the appropriateness of the bargaining unit or about the election procedures. No objection to the election

three-week period following the representation election, the Company laid off, and refused to rehire, 18 employees. The Company failed to bargain with the union concerning these layoffs. Furthermore, in the week following the election, but prior to the Board's certification of the union as the employees' collective bargaining representative, the Company subcontracted away the balance of its hauling operations without bargaining in good faith over the matter. Several months later, when certain of the employees went out in a lawful strike by way of protest to the Company's unfair labor practices, the Company terminated the employment of three employees who supported the strike by refusing to cross the picket line. Finding these actions of the Company to be unfair labor practices, the Board entered what it deemed to be appropriate remedial orders, which the Board now seeks to enforce, and which the Company seeks to have set aside.

At the hearing before the ALJ, Carbonex's position was that the layoffs, and the decision to subcontract the balance of its hauling operations, were caused by economic conditions, and were not in any degree prompted by anti-union animus. The ALJ rejected these contentions and found that the layoffs and the subcontracting of the truck hauling operations were caused *solely* by the Company's anti-union animus. In affirming such findings, the Board went further than the ALJ and characterized Carbonex's economic justification argument as being the result of "knowing and calculated fabrication."

 On judicial review of a Board order, a court should order enforcement if the Board correctly interpreted and applied the law, and if there is substantial evidence in the record, when considered in its entirety, to support the Board's findings. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496–97, 71 S.Ct. 456, 468–69, 95 L.Ed. 456 (1951); *NLRB v. Pepsi-Cola Bottling Co. of Topeka*, 613 F.2d 267, 270 (10th Cir. 1980). In our view, the record amply supports the Board's

findings that after the representation election Carbonex laid off employees and subcontracted certain truck hauling work not previously subcontracted as retaliation for its employees' unionization effort. Indeed, such evidence is rather overwhelming. The mere fact that Carbonex claimed economic justification is not decisive of the matter. As indicated, the Board, as the fact-finder, totally rejected that particular argument as being nothing but a contrived afterthought.

Carbonex suggests that in analyzing the testimony of the numerous witnesses who testified before the ALJ, both the ALJ, and later the Board, applied the wrong standard or test. Counsel argues that this Court, on review, should re-evaluate the evidence in the light of the Board's recent decision in *Wright Line*, 251 NLRB No. 150 (1980). Counsel does not desire a remand to the Board for reconsideration. For us to re-evaluate testimony in the light of a changed standard would seem, to us, to require that we engage in fact-finding, which is not a prerogative of a reviewing court. Be that as it may, we do not regard this to be a proper case for a consideration of the new *Wright Line* standard. Whether *Wright Line* cleared up a gray area, or, on the contrary, compounded the entire problem, is debatable. *Compare Behring Int'l, Inc. v. NLRB*, 675 F.2d 83 (3d Cir. 1982) *and NLRB v. Wright Line*, 662 F.2d 899, 904–05 (1st Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982) *with Peavey Co. v. NLRB*, 648 F.2d 460, 462 (7th Cir. 1981) *and NLRB v. Nevis Indus., Inc.*, 647 F.2d 905, 909 (9th Cir. 1981). In any event, as indicated, we do not feel it necessary to consider *Wright Line* in the present proceeding.

 The instant case was decided by the Board some five months *before* the Board enunciated the *Wright Line* rule. We do not believe that when the Board elects to modify one of its standards, that we must apply the new standard to cases decided by the Board *before* the change, which are en route to us on the date of the change. See

being filed, the Board certified the United Mine Workers as the employees' collective bargaining representative on June 28, 1978, eight days following the election.

*Lippincott Indus., Inc. v. NLRB*, 661 F.2d 112, 115 (9th Cir. 1981), where the Ninth Circuit declined to apply the *Wright Line* standard to a Board decision rendered before the announcement of *Wright Line.*

Furthermore, in view of the findings of the Board, the present case does not lend itself to the *Wright Line* formula. The Board, in *Wright Line*, was faced with a "dual motive" case where the employer, in fact, had a "legitimate business reason" for the discharge of one of its employees. Unlike *Wright Line*, the Board in the instant case found that Carbonex did *not* have a legitimate business justification for its action, and that, to the contrary, the excuse of economic necessity advanced by Carbonex was not only pretextual, but fabricated. In short, Tenth Circuit consideration of the *Wright Line* rule will have to wait.

■ The strike matter merits comment. Several months after the representation election at which a majority of the employees voted in favor of the United Mine Workers of America, a strike was called. The fact of a strike was alleged in the complaint, and admitted by Carbonex in its answer. It was the position of the General Counsel that the strike was a lawful response to Carbonex's unfair labor practices, *i.e.*, discharging employees, subcontracting work, and refusing to bargain in good faith. On the other hand, Carbonex contended that the strike was unlawful and prompted by union demands that were in themselves unlawful. The Board found, however, that the strike was caused by unfair labor practices on the part of Carbonex. This finding is also, in our view, supported by the record.

In connection with the strike, the evidence disclosed that three employees were discharged by Carbonex for refusing to cross the picket line. Carbonex asserts that the discharge of these three employees was outside the issues in the case. The Board, however, felt that the layoff of the employees was "intertwined" with the other allegations in the complaint, and that the matter had been "fully litigated." We agree. *NLRB v. Tricor Prod., Inc.*, 636 F.2d 266, 271 (10th Cir. 1980). We perceive of no

good reason to send this one phase of the case back for further consideration. The dispute between Carbonex and its employees, and the union, was aired before the ALJ in a hearing that extended for sixteen days. The ALJ's decision consisted of forty-five pages, and, needless to say, set forth great detail.

In addition to finding that the layoffs of 18 employees after the representation election was discriminatorily motivated and thus violative of section 8(a)(3), the Board found that Carbonex had a legal duty to bargain with the union over the layoff. The Company's failure to bargain over the layoff was found to be violative of section 8(a)(5).

■ It is established that while an employer's power to alter working conditions is not contingent upon union agreement, the employer does have a duty to notify the union before effecting the changes so as to give the union a meaningful chance to offer counter-proposals and counter-arguments. *NLRB v. W. R. Grace & Co.*, 571 F.2d 279, 283 (5th Cir. 1978); *NLRB v. J. P. Stevens & Co.*, 538 F.2d 1152, 1162 (5th Cir. 1976). Therefore, even accepting Carbonex's claim that the layoffs were economically motivated, the Company's failure to bargain with the union over the layoffs violated section 8(a)(5). *See NLRB v. United Nuclear Corp.*, 381 F.2d 972 (10th Cir. 1967).

■ Nor are we persuaded by the Company's contention on appeal that the union waived its right to bargain over the layoff of the 18 workers. Whether a union has waived its right to bargain over an issue by failing to raise the issue or by agreeing to the employer's action is a question of fact to be determined by the Board and to be upheld if supported by substantial evidence. *NLRB v. United Nuclear Corp.*, 381 F.2d 972, 977 (10th Cir. 1967). The Board's determination that there was no waiver is supported by the evidence.

■ The Board also found that the Company had violated section 8(a)(5) by refusing to bargain with the union over the decision to subcontract the truck hauling

operations. On appeal, the Company argues that its duty to bargain did not arise until the date of the union's certification as the employees' collective bargaining representative, which occurred on the day following the subcontracting decision. Again, the Company's position is without merit.

It is well settled that unilateral action affecting working conditions taken by an employer following a union victory at a representation election violates section 8(a)(5), even if such unilateral action occurs prior to the union's certification as the collective bargaining agent. *King Radio Corp. v. NLRB*, 398 F.2d 14, 17 (10th Cir. 1968). *Accord NLRB v. Allied Prod. Corp.*, 629 F.2d 1167, 1171 (6th Cir. 1980); *NLRB v. McCann Steel Co.*, 448 F.2d 277 (6th Cir. 1971); *NLRB v. Laney & Duke Storage Warehouse Co.*, 369 F.2d 859 (5th Cir. 1966). As the Board recently restated, "the duty to bargain, at least in the sense of a prohibition on unilateral changes, attaches as of the election date." Celotex Corp. and United Cement, Lime and Gypsum Workers Int'l Union, AFL–CIO, 259 NLRB No. 159 (1982).

Carbonex also complains that some of the remedies ordered by the Board are unduly onerous. Under section 10(c) of the Act, the Board has considerable discretion in fashioning a remedy for unfair labor practices. *NLRB v. Seven-Up Bottling Co.*, 344 U.S. 344, 346, 73 S.Ct. 287, 288, 97 L.Ed. 377 (1953). We find no abuse of that discretion in the instant case. *See NLRB v. Northeast Okla. City Mfg. Co.*, 631 F.2d 669, 678 (10th Cir. 1980); *Newspaper Printing Co. v. NLRB*, 625 F.2d 956, 967 (10th Cir. 1980); *NLRB v. Jackson Farmers, Inc.*, 457 F.2d 516, 518 (10th Cir. 1972).

Order enforced.