**PAPER, ALLIED, CHEMICAL AND ENERGY WORKERS INTERNATIONAL UNION, LOCAL 5–508, AFL—CIO, Plaintiff,**

v.

**SLURRY EXPLOSIVE CORPORATION, Defendant.**

No. Civ.A. 99–2038–CM.

United States District Court, D. Kansas.

July 28, 2000.

---

Blake & Uhlig, P.A., Kansas City, KS, for Workers International Union, Local 5–508, plaintiff.

Michael F. Delaney, Jeffrey M. Place, Spencer, Fane, Britt & Browne, Kansas City, MO, for Slurry Explosive Corporation, defendant.

Michael T. Manley, Blake & Uhlig, P.A., Kansas City, KS, for Oil, Chemical and Atomic Workers International Union, counter-defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This matter is presently before the court on the parties' cross motions for summary judgment (Docs.52, 54). Plaintiff in this case, under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeks to compel arbitration of plaintiff's grievance over the discharge of defendant's employee David Buzard. Alternatively, plaintiff seeks to enforce a verbal collective bargaining agreement ("CBA") allegedly entered into between the parties to restore Mr. Buzard to his previous employment position.

In its counterclaims, defendant first alleges that plaintiff breached a verbal contract wherein plaintiff allegedly agreed not to assert that Mr. Buzard was an "employee" under the terms of the parties' 1997 CBA. Second, defendant alleges plaintiff fraudulently misrepresented its intentions when plaintiff allegedly agreed not to utilize the defendant's agreement to permit Mr. Buzard to obtain unemployment benefits as evidence to show he was on a layoff, rather than discharged. As set forth in more detail below, defendant's motion is granted in part, and plaintiff's motion is granted in part.

## I. Facts

### A. Background of 1997 Collective Bargaining Agreement

Except where noted, the facts are not in dispute. Plaintiff and defendant were parties to a CBA, effective March 31, 1997 ("1997 contract"),[1] covering the production and maintenance employees working at defendant's Hallowell, Kansas facility. The 1997 contract applied only to full-time and regular part-time production and maintenance employees. The 1997 contract excluded from coverage otherwise covered employees who were on layoff status for more than twelve months. Under its terms, a person on layoff in excess of twelve months was no longer a covered "employee."

The 1997 contract required that all disputes arising under the contract be submitted to arbitration. Article VIII of the contract provided a four-step grievance process, culminating in binding arbitration. This grievance procedure was intended "to provide an orderly method for the settlement of claims by employees or the Union concerning the specific provisions of this Agreement." Under the contract a "grievance" is a "claim by an employee, or the Union, that a term of th[e] contract has been violated." The 1997 contract limited its grievance and arbitration provisions "to grievances and claims arising and actually filed in writing during the term of this Agreement."

The 1997 contract provides that employees may only be discharged for "just cause." Violations of defendant's substance abuse policy qualify as just cause for discharge. An employee's conviction or arrest under any criminal drug statute constitutes a violation of the substance abuse policy.

### B. Mr. Buzard's Layoff or Discharge

Mr. Buzard was employed as a maintenance worker in defendant's Hallowell fa-

---

**1.** The 1997 contract was in effect from March 31, 1997 through February 5, 1999. The court, therefore, assumes the contract was in effect at all times relevant to the claims raised.

cility. On Saturday, October 26, 1996, approximately five months prior to the signing of the 1997 contract, Mr. Buzard was arrested for a criminal drug offense in Kansas. The weekend of his arrest, Mr. Buzard spoke to William Terry Wright, defendant's Operations Manager, twice by telephone. In these conversations, Mr. Buzard informed Mr. Wright of the arrest and asked for vacation time to address his legal problems. Mr. Buzard took one week of paid vacation following his arrest (Oct. 28–Nov.1). On November 4th, Mr. Buzard met with Mr. Wright, and informed Mr. Wright that a hearing in his criminal case was set for late in November. This same day (Nov. 4), Mr. Wright placed Mr. Buzard on unpaid administrative leave.

On November 19, Mr. Buzard was formally charged with a criminal drug offense under the laws of the state of Kansas. On November 27, 1996 defendant removed Mr. Buzard from its payroll. Defendant characterized the employment action as a "layoff" in a personnel action notice. The notice specified Mr. Buzard was not eligible for rehire because he was under indictment for several felony drug charges. Defendant did not provide Mr. Buzard or any of plaintiff's union representatives with a copy of the notice. At the time of Mr. Buzard's layoff, defendant paid to Mr. Buzard all of his accrued vacation pay, totaling 120 hours, for a gross payment of $1,230.00. Defendant's 1996 decisions regarding Mr. Buzard's eligibility for rehire and payment of accrued vacation contrasted with its decisions one year earlier. Specifically, in July 1995, defendant placed Mr. Buzard on temporary layoff (for reasons unrelated to the 1996 layoff), and specified on a personnel action notice that Mr. Buzard was eligible for rehire and that he would not be paid his accrued vacation.

At the time of Mr. Buzard's layoff in 1996, defendant completed an "Insurance Termination Notification" and a "UCAC Employment Termination Report." The UCAC form indicated defendant was not protesting Mr. Buzard's right to receive unemployment compensation benefits. Accordingly, Mr. Buzard drew unemployment compensation, unopposed by defendant. Mr Buzard received the Insurance Termination Notice in the mail. This Notice identified him as a "terminating employee." Mr. Buzard believed this phrase meant only that his insurance coverage was ending, not that he had been discharged from employment.

Although Mr. Buzard understood that he was no longer on defendant's payroll after November 27, 1996, the plaintiff and defendant have different accounts of the status of Mr. Buzard's employment following his indictment. It is uncontroverted that from November 1996 through August 18, 1998 Mr. Buzard performed no work for defendant.

### 1. Plaintiff's Account of Agreement Between Mr. Buzard and Mr. Wright

Plaintiff relays the following facts. Mr. Buzard testified that, after he was criminally charged and before he was placed on layoff on November 27, 1996, he met with Mr. Wright, the Operations Manager, to discuss his situation. Mr. Wright pointed out to Mr. Buzard that he was in violation of defendant's substance abuse policy. Mr. Wright laid out three options for Mr. Buzard: (1) Mr. Buzard could resign and the defendant would not mention the arrest in his employment records; (2) Mr. Buzard could try to go back to work, but his employment would be terminated; or (3) Mr. Buzard could remain on administrative leave and return to work if he was found not guilty or if the charges against him were dismissed. When presented with these options, Mr. Buzard asked about drawing unemployment compensation. Mr. Wright then offered to allow Mr. Buzard to draw unemployment while on administrative leave, under option number three. After this meeting, on or about November 27, 1996, Mr. Buzard spoke to Mr. Wright on the telephone, and Mr.

Wright confirmed that Mr. Buzard would be able to draw unemployment. Mr. Wright stated that the papers would be filled out indicating Mr. Buzard was on a layoff, and defendant would not contest Mr. Buzard's unemployment claim. Mr. Wright also indicated Mr. Buzard would actually remain on administrative leave.

Mr. Buzard understood at this time that employees could be fired for an arrest on drug charges, but he did not believe that he had been discharged. Mr. Wright told Mr. Buzard he could stay on administrative leave "as long as it took." Mr. Wright also told Mr. Buzard that after the criminal charges were dropped or if he prevailed in his criminal case, Mr. Wright would bring him back to work with full seniority and full benefits. When Mr. Buzard asked Mr. Wright why defendant had paid his accumulated vacation time, Mr. Wright responded that he thought Mr. Buzard might need it and that Mr. Buzard could take additional time off when he returned to work, if needed.

### 2. Defendant's Account of Agreement Between Mr. Buzard and Mr. Wright

Defendant presents a differing account of Mr. Wright's agreement with Mr. Buzard. Consistent with Mr. Buzard's account, Mr. Wright also testified that a final meeting with Mr. Buzard took place prior to November 27, 1996. In that meeting, Mr. Buzard told Mr. Wright that he needed money. Mr. Wright then offered Mr. Buzard three options: (1) Mr. Buzard could resign and the defendant would not make any record of the circumstances leading to the resignation, and would provide him with a letter of recommendation; (2) Mr. Wright could fire Mr. Buzard pursuant to the substance abuse policy, or (3) Mr. Wright could terminate Mr. Buzard's employment, but record it as a layoff on company records so that Mr. Buzard could

collect unemployment. Mr. Wright told Mr. Buzard that if he was found not guilty, Mr. Wright would **consider** bringing him back to work. Mr. Wright testified that Mr. Buzard wanted time to think about his options. Mr. Buzard called the next morning to tell Mr. Wright he wanted the layoff, under option number three, so that he could receive unemployment compensation.

### C. References to Mr. Buzard's Employment Status

Following Mr. Buzard's arrest in April 1996, the parties were engaged in negotiations for their 1997 contract. On more than one occasion during the negotiations, Mr. Wright referred to Mr. Buzard's status as an "administrative leave," rather than a "layoff." Also during the negotiations, the plaintiff proposed red-circling[2] David Buzard's wages because the plaintiff expected him to return to work and to draw the same wages. Further, on April 11, 1997 when the parties met to sign the 1997 contract, Mr. Wright discussed the K–P Operator or the Mixer positions at defendant's Hallowell facility. Mr. Wright commented that he wished Mr. Buzard's situation would settle soon because he would like Mr. Buzard to bid on either of the positions when he returned to work.

Larry MacPherson, an employee and Senior Steward at defendant's Hallowell facility, testified about a conversation he had with Mr. Wright in May 1998 regarding the retirement of David Buzard's father, James Buzard. James Buzard worked as an operator at the defendant's Hallowell facility. When James Buzard announced that he was retiring, Mr. MacPherson asked Mr. Wright about training a replacement. Mr. Wright responded by asking why he would want to train someone if David Buzard was coming back as an operator.

**2.** The papers presented to the court do not define the term "red-circling." In the context presented, the court assumes the term refer-

ences maintaining Mr. Buzard's wages on defendant's payroll.

## D. Earnest Anderson's Testimony

Defendant asserts that Ernest Anderson, the plaintiff's International Representative, testified that it was not clear what defendant was going to do about Mr. Buzard after he was arrested. Plaintiff asserts that this statement mischaracterizes Mr. Anderson's testimony. Plaintiff explains that Mr. Anderson testified that he and defendant's counsel, William Toney, had a telephone conversation on November 24 or 25, 1996. During the conversation, Mr. Toney indicated to Mr. Anderson that Mr. Buzard and Mr. Wright had agreed that defendant's records would reflect Mr. Buzard's employment status as a "layoff." Mr. Toney indicated that defendant would only be willing to characterize Mr. Buzard's status as a layoff if Mr. Anderson and the plaintiff agreed that the layoff was purely a device to allow Mr. Buzard to collect unemployment and that Mr. Buzard was not, in fact, on layoff. Mr. Anderson agreed that the plaintiff would not later claim that Mr. Buzard was on layoff. Mr. Anderson told Mr. Toney that the layoff "shouldn't change any status of what this is because right now he's [Mr. Buzard's] on administrative leave."

## E. Resolution of December 5, 1997 Grievance

Mr. Anderson testified that on December 5, 1997, the plaintiff withdrew a grievance over a supervisor performing Mr. Buzard's maintenance job based on Mr. Wright's representation that pressing the grievance would "complicate" Mr. Buzard's return to work. Mr. Wright stated that he did not want to put someone in the position for a few months and then have to let him go if Mr. Buzard was found innocent or the charges were dropped. David Han, President of the Union, and Mr. MacPherson, the plaintiff's senior steward, also testified that a grievance was withdrawn to prevent complicating Mr. Buzard's return to work.

## F. Mr. Buzard's Request to Return to Work

On August 19, 1998, the State of Kansas dismissed with prejudice all criminal charges against Mr. Buzard. This same day, Mr. Buzard spoke with Mr. Wright and requested to be returned to work at defendant's Hallowell facility. Mr. Buzard testified that he believed he was seeking to return to work under a verbal agreement he had reached with Mr. Wright.

On August 21, 1998 Mr. Wright denied Mr. Buzard's request to return to work. Mr. MacPherson testified that he spoke with Mr. Wright on August 21, 1998 and asked him when Mr. Wright had discharged Mr. Buzard. Mr. Wright replied that he had fired him "today" [August 21, 1998]. Mr. Buzard testified that it was defendant's practice to demand an employee return company-issued uniforms upon termination. Defendant has never requested that Mr. Buzard return his uniform.

On August 24, 1998, Mr. Buzard attempted to file a grievance under the 1997 contract. The grievance contested whether defendant had "just cause" to terminate Mr. Buzard's employment pursuant to defendant's substance abuse policy. Defendant refused to recognize Mr. Buzard's grievance.

## G. The Lawsuit

On February 1, 1999, plaintiff filed suit seeking to compel defendant to take Mr. Buzard's grievance to binding arbitration pursuant to the 1997 contract. Plaintiff amended its complaint, adding a count for breach of an alleged verbal CBA. Defendant counterclaimed, alleging: 1) that plaintiff breached its oral contract with defendant to not assert that Mr. Buzard was an "employee" covered by the 1997 agreement, and 2) that plaintiff misrepresented itself by indicating that it would not use the company's agreement to cooperate in permitting Mr. Buzard to obtain unemployment benefits as evidence that the

plaintiff was on a "layoff," rather than discharged from employment.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (*citing Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmov-

ing party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (*quoting* Fed.R.Civ.P. 1).

## III. Plaintiff's Count I Claim Requesting an Order to Arbitrate

In count I of the complaint, plaintiff, pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeks to compel defendant Slurry to submit the grievance regarding Mr. Buzard's discharge to final and binding arbitration under the terms of the 1997 contract.[3]

### A. Arbitrability of Grievances

Arbitration is a matter of contract; a party cannot be required to submit to arbitration any dispute which it has not agreed to submit. *United Steelworkers of Am. v. Warrior & Gulf Navigation*

3. The district court has jurisdiction over count I of plaintiff's complaint by virtue of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which provides that "[s]uits for violations of contracts between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction of the parties...."

29 U.S.C. § 185(a). The federal courts thus have jurisdiction to determine whether or not an employer is bound by a collective bargaining agreement to arbitrate a particular dispute. *See Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

*Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Whether a CBA creates a duty to arbitrate a particular grievance is an issue for judicial determination unless the parties clearly and unmistakenly provide otherwise. *AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

In deciding whether a dispute is arbitrable, the court may not rule on the potential merits of the underlying claim. *See AT & T*, 475 U.S. at 649, 106 S.Ct. 1415. As the Supreme Court stated in *United Steelworkers of America v. American Manufacturing Company:*

> The courts ... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.

363 U.S. 564, 566, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) (footnote omitted).

Where a CBA contains an arbitration clause, courts apply a presumption of arbitrability. *See AT & T*, 475 U.S. at 650, 106 S.Ct. 1415. This presumption is particularly applicable where the arbitration clause is broad. *See id.* at 650, 106 S.Ct. 1415. Where an agreement contains an arbitration clause, the court should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf*, 363 U.S. at 582–583, 80 S.Ct. 1347. In the "absence of any express provision excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* at 584–85, 80 S.Ct. 1347. Any "[d]oubts should be resolved in favor of coverage." *AT & T*, 475 U.S. at 648–50, 106 S.Ct. 1415.

## B. Arbitrability of Grievance at Issue

Plaintiff and defendant have filed cross motions for summary judgment on count I of plaintiff's complaint. Plaintiff seeks summary judgment requesting the court to order arbitration. Defendant seeks summary judgment requesting the court to deny an order to arbitrate. The parties agree that it is the court's prerogative to determine the arbitrability of the grievance at issue. The parties disagree, however, on the analysis the court should conduct to determine arbitrability. For the reasons stated below, the court grants summary judgment to the plaintiff on count I of plaintiff's complaint, and orders the parties to arbitrate the grievance over Mr. Buzard's discharge. Further, the court denies summary judgment to the defendant on count I of plaintiff's complaint.

### 1. Potential Tension

Defendant maintains that to determine arbitrability the court must first decide whether, under the terms of the 1997 contract's arbitration clause, Mr. Buzard was an "employee" entitled to file a grievance. Plaintiff disagrees and asserts the court's inquiry should be restricted to whether the arbitration clause in the contract can be interpreted to cover the grievance alleged.

Plaintiff asserts that if the court were to follow defendant's proposed analysis of the arbitrability question and determine Mr. Buzard's employment status, it would impermissibly reach the merits of the grievance, *i.e.*, whether the defendant had just cause to discharge Mr. Buzard. Specifically, defendant asks the court to decide the date of Mr. Buzard's discharge in the process of determining whether Mr. Buzard was an "employee" under the 1997 contract entitled to file a grievance. However, if the grievance were presented to an arbitrator, plaintiff argues, the arbitrator also must determine the date of Mr. Buzard's discharge in resolving whether the

defendant had just cause to terminate Mr. Buzard's employment.

The court recognizes that some cases may present a tension where the inquiries relevant to the arbitrability question and those relevant to the underlying substantive claim overlap. As noted by the Seventh Circuit, these overlapping inquiries

> create[ ] tension between two doctrines relating to the arbitrability of labor disputes. On one side is the proposition, ..., that the question of arbitrability is to be decided by the court. On the other is the proposition that, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."

*Independent Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233, 235–36 (7th Cir. 1993) (*citing AT & T*, 475 U.S. at 649, 106 S.Ct. 1415). As detailed below, the court finds it unnecessary to determine the date of Mr. Buzard's discharge in order to decide the arbitrability question. Therefore, the court finds the tension between the two competing doctrines does not exist in this case.

### 2. Mr. Buzard's Employee Status

■ It is the court's role to determine arbitrability of the grievance over Mr. Buzard's discharge. The parties have not clearly and unmistakenly provided that an arbitrator, rather than the court, should decide the arbitrability issue. *See AT & T*, 475 U.S. at 649, 106 S.Ct. 1415.

■ The parties have included an arbitration provision in the 1997 contract providing that its grievance procedure is intended for use in settling claims "by employees or the Union concerning the specific provisions of this Agreement." This provision raises the presumption that the

parties have bargained for an arbitrator, rather than the courts, to interpret the substantive provisions of the contract. *See id.* Accordingly, the court will not reach the merits of the grievance at issue.

In support of its motion, defendant first asserts that because Mr. Buzard was discharged in November 1996,[4] he was not an "employee" at the time the grievance over his discharge was filed in August 1998. Accordingly, defendant asserts that Mr. Buzard was not an "employee" who, under the 1997 contract, was entitled to use its grievance procedures. Defendant alternately asserts that even if Mr. Buzard was not discharged in November 1996, because Mr. Buzard was on layoff for more than twelve months (beginning in November 1996), he was not an "employee" in August 1998, when the grievance was filed. Article XI, Section 4 of the 1997 contract provides that any employee on layoff for more than twelve months ceases to be an employee of the company.

■ The court finds that the language of the 1997 contract's grievance procedure is "susceptible of an interpretation that covers the asserted dispute." *See Warrior & Gulf*, 363 U.S. at 582–583, 80 S.Ct. 1347. The arbitration clause in the parties' contract provides that a " 'grievance,' as that term is used in this contract, means a claim by **an employee, or the Union,** that a term of this contract has been violated." (Article VIII) (emphasis added).

David Buzard signed the grievance at issue. However, the grievance report contains language that makes it clear the grievance was filed not only by Mr. Buzard, but also by the plaintiff. Above its signature line, the report states:

> ber 1996 and that Mr. Buzard's employment was terminated on November 27, 1996. Although there is a disputed issue of fact regarding the date of Mr. Buzard's discharge, because the court finds it unnecessary to reach the issue, it is not material to this motion.

4. The parties disagree over the date Mr. Buzard was "discharged" from defendant Slurry. Plaintiff asserts that Mr. Buzard was not effectively discharged until August 21, 1998, when defendant denied Mr. Buzard's request to return to work. In contrast, defendant asserts Mr. Buzard was "laid off" in Novem-

"Remedy: The **Union** demands that the Company cease and desist from violating the Labor Agreement, that the incident(s) be rectified, that proper compensation, including benefits and overtime, at the applicable rate of pay, be paid for all losses; and further that those affected be made whole in every respect."

(Grievance form) (emphasis added). It is undisputed that the plaintiff is a union or labor organization within the meaning of the LMRA, 29 U.S.C. § 141 *et seq.* It is also undisputed that plaintiff was the union with whom defendant entered into the 1997 contract. Further, there is no evidence presented indicating the plaintiff is not a "union" under the terms of the 1997 contract.

Resolving any doubts in favor of arbitration, the court finds the language of the 1997 contract is susceptible of an interpretation covering the grievance at issue. Specifically, the contract may be interpreted to mean that because the plaintiff union filed the grievance on Mr. Buzard's behalf, he need not be an "employee" under the contract to have his grievance recognized by the defendant.

### 3. Whether the Grievance at Issue Arose During the Term of the 1997 Contract

In further support of its motion, defendant cites language from the 1997 contract's arbitration clause that "[t]he grievance and arbitration provisions provided for herein, ... are limited to grievances and claims **arising and actually filed in writing during the term of this Agreement.**" (Article VIII) (Grievance Procedure) (emphasis added). Further, the defendant cites the United States Supreme Court decision in *Litton Financial Printing Division v. NLRB,* wherein the Court notes that the presumption in favor of arbitration is "limited by the vital qualification" that the arbitration regards "matters and disputes **arising out of** the relation governed by the contract." 501 U.S.

190, 204, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) (emphasis added).

Construing the language in the 1997 contract broadly and resolving any doubts in favor of arbitration, the court finds the language limiting grievances to those "arising" during the term of the 1997 agreement is susceptible of an interpretation to cover the asserted dispute. Under the evidence presented, a reasonable fact finder may conclude that incidents both giving rise to and relevant to the grievance occurred during the term of the contract. For instance, Mr. Buzard's criminal charges were dismissed in August 1998, during the term of the 1997 contract. Accordingly, whether Mr. Buzard's employment status was altered in November 1996 (plaintiff's contention), November 1997 (due to twelve months on layoff as defendant contends), or in August 1998 (defendant's contention), the contract may be construed to cover the asserted dispute regarding whether the defendant had just cause to discharge Mr. Buzard.

Accordingly, the court finds the 1997 contract covers the asserted dispute and orders the parties to submit the grievance filed by the plaintiff union over Mr. Buzard's discharge to mediation, pursuant to the 1997 contract's terms. Plaintiff's motion for summary judgment on count I of its complaint is granted. Defendant's motion for summary judgment on count I of plaintiff's complaint is denied.

### IV. Plaintiff's Count II Claim for Breach of Collective Bargaining Agreement

In count II of the complaint, plaintiff alleges that defendant breached a verbal CBA entered into by the parties. Plaintiff contends that Mr. Buzard and Mr. Wright entered into an agreement in November 1996, whereby the defendant agreed that in the event Mr. Buzard was found not guilty of the criminal charges against him or if the charges were dismissed, Mr. Buzard would be restored to his former employment with defendant. The plaintiff

seeks, under section 301 of the LMRA, an order compelling defendant to specifically perform the terms of this alleged agreement.

Defendant seeks summary judgment on count II of plaintiff's complaint. Defendant contends that the parties did not enter into an enforceable labor contract regarding the terms of Mr. Buzard's return to work because there was no meeting of the minds as to the contract's terms. Alternatively, defendant seeks summary judgment on count II by contending that plaintiff union has no standing to enforce any agreement reached in November 1996. Specifically, defendant argues that even if there was a meeting of the minds between Mr. Buzard and Mr. Wright, any agreement reached was a private contract, not a CBA enforceable by plaintiff under section 301 of the LMRA.

### A. Standing to Enforce Agreement

 The court first examines whether plaintiff has standing under section 301 to enforce any agreement reached between Mr. Buzard and Mr. Wright. Plaintiff, as the party invoking federal jurisdiction, bears the burden to establish standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). At the summary judgment stage, plaintiff's standing must be supported by specific evidentiary facts and not by mere allegations. *See id.* at 562, 112 S.Ct. 2130. The court assumes for purposes of the standing determination only that there was a meeting of the minds between Mr. Buzard and Mr. Wright sufficient to form a contract.

 Labor organizations may achieve standing to enforce a CBA through section 301. Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization ... .

may be brought in any district court of the United States having jurisdiction of the parties ..." 29 U.S.C. § 185(a). Section 301 does not, however, provide standing to labor organizations to raise suits for violations of individual contracts. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) ("Section 301 says nothing about the content or validity of individual employment contracts.").

 Under these principles, where the agreement reached between Mr. Wright and Mr. Buzard is a CBA, plaintiff may achieve standing to enforce it under section 301. *See Smith v. Evening News Ass'n,* 371 U.S. 195, 199, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) (union has standing to enforce a CBA to which it is a signatory). However, where the agreement reached is a private contract, section 301 does not provide plaintiff the standing to enforce it. Although an individual employee, as well as a union, has the right to enforce a CBA, *see Evening News Ass'n,* 371 U.S. at 199, 83 S.Ct. 267, the court finds no authority, nor have counsel called any to the court's attention, for the opposite proposition, *i.e.,* that the union has the right to enforce the individual contract of a bargaining unit employee.

### B. Formation of a CBA[5]

 A CBA arises from the "performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith." 29 U.S.C. § 158(d). A CBA may be entered into by the employer and the certified bargaining representative or other representative of the covered employees. *See* THE DEVELOPING LABOR LAW, 3d ed. Hardin, ed. at 934 (1992). Further, the CBA may be a verbal agreement, not committed to writing. *See*

---

5. A federal district court has jurisdiction under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), to determine whether the parties conduct constituted formation of a CBA between employer and

union. *See Mack Trucks, Inc. v. International Union, United Auto, Aerospace and Agr. Implement Workers of Am.,* 856 F.2d 579, 586–89 (3d Cir.1988).

*International Union, UMWA v. Big Horn Coal Co.,* 916 F.2d 1499, 1502 (10th Cir. 1990) (a contract "need not be a written, signed collective bargaining agreement, but may exist as any informal agreement between the parties significant to the maintenance of labor peace between them.").

Here, it is uncontroverted that Mr. Buzard was selected to serve on the union's bargaining committee (Complaint ¶ 11; Answer ¶ 11). However, plaintiff does not set forth any evidence indicating that Mr. Buzard was acting as a member of the bargaining committee and on behalf of the plaintiff at the time he entered into an agreement with Mr. Wright in November 1996 regarding his own employment status. Further, plaintiff cites no authority indicating that every communication a union representative has with an employer is deemed to be on behalf of the union.

The court finds under the evidence presented, even when construed in the light most favorable to the plaintiff, that no reasonable fact finder could conclude that Mr. Buzard was acting as an agent on behalf of the plaintiff and its represented employees when he sought to make an agreement with Mr. Wright regarding his own employment status. Accordingly, the court finds as a matter of law that any agreement entered into between Mr. Buzard and Mr. Wright was not, at the time of its formation, a CBA.

### C. Ratification of Private Agreement

Plaintiff also asserts that it "ratified" any private agreement entered into between Mr. Buzard and Mr. Wright, thereby transforming the agreement into a CBA that plaintiff has standing to enforce. Plaintiff provides the court with no authority specifying the necessary showing for a union to ratify an employee's private contract. Generally, ratification is "[t]he affirmance by a person of a prior act which did not bind him, but which was done or professedly done on his account, whereby the act, . . . is given effect as if originally authorized by him." BLACK'S LAW DICTIONARY 1261 (6th ed.1990). The court finds, assuming a labor union could ratify a private agreement and thereby transform it into a CBA, that no reasonable fact finder could conclude that the plaintiff here ratified Mr. Buzard and Mr. Wright's agreement.

Plaintiff contends the following facts establish ratification. In November 1996, Mr. Anderson, the union's international representative, remarked to Mr. Toney, defendant's counsel, that Mr. Buzard and Mr. Wright had agreed that defendant's records would reflect Mr. Buzard's status as being on "layoff." Further, plaintiff agreed in December 1997 to withdraw a grievance over a supervisor performing Mr. Buzard's job based upon Mr. Wright's statement that the grievance would complicate Mr. Buzard's return to work if he was found not guilty or the charges against him were dropped.

Taking these facts as stated by plaintiff to be true, the court finds that plaintiff has failed to set forth evidence establishing a genuine issue for trial. The facts presented simply reflect the union's awareness of the agreement and their actions subsequent to it. Furthermore, no evidence is presented to show that Mr. Buzard purported to enter into an agreement on the union's behalf, as is required for a showing of ratification.

### D. Conclusion

This court finds that defendant is entitled to judgment as a matter of law on count II of plaintiff's complaint. The court has determined no reasonable fact finder could conclude either that Mr. Buzard entered into a CBA on the plaintiff's behalf or that the plaintiff ratified any CBA purportedly entered into by Mr. Buzard. Therefore, because the court finds as a matter of law that no CBA was formed, plaintiff has no standing through section 301 to enforce any agreement entered into by Mr. Buzard and Mr. Wright. The

court finds it unnecessary to examine the sufficiency of plaintiff's showing as to whether there was a meeting of the minds between Mr. Buzard and Mr. Wright sufficient to form a contract. The court grants defendant's motion for summary judgment on count II of plaintiff's complaint.

## V. Defendant's Fraudulent Misrepresentation Counterclaim (Count II)

In count II of its counterclaim,[6] defendant asserts plaintiff fraudulently misrepresented its intentions when Mr. Anderson, the International union representative, agreed that the plaintiff would not use the defendant's agreement to cooperate in permitting Mr. Buzard to obtain unemployment benefits as evidence that Mr. Buzard was on layoff status. Plaintiff asserts that it is entitled to summary judgment because 1) this court may not assert jurisdiction over the defendant's claim under section 301 of the LMRA, and 2) defendant's claim is preempted under *Garmon* principles. For the reasons set forth below, the court denies summary judgment to plaintiff.

### A. Jurisdiction Over Fraudulent Misrepresentation Claim

#### 1. Section 1367 Jurisdiction

Defendant asserts that this court has jurisdiction over its state law claim of fraudulent misrepresentation pursuant to the court's supplemental jurisdiction under 28 U.S.C. § 1367. Defendant asserts that its counterclaims arise out of the same transaction or occurrence as the other claims in the case and are thus part of the same case or controversy. The court agrees.

▮ This court may, in the exercise of its discretion, exercise supplemental jur-

isdiction over defendant's misrepresentation claim if it is sufficiently related to a pending federal claim. *See* 28 U.S.C. § 1367(a). Here, defendant asserts a claim for breach of a labor contract, over which this court has original jurisdiction under 29 U.S.C. § 185(a).[7] The same set of facts forms the basis for both the federal breach of contract claim and the state law misrepresentation claim. In fact, the misrepresentation claim is based on alleged fraud in the formation of the contract. Accordingly, this court exercises supplemental jurisdiction over defendant's state law claim pursuant to 28 U.S.C. § 1367.

#### 2. Propriety of Section 301 jurisdiction

Plaintiff asserts that this court may not assert section 301 jurisdiction over count II because the defendant's claim of fraudulent misrepresentation is actually asserting a claim of contract invalidity. Plaintiff asserts that the principles announced by the Supreme Court in *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto. Workers*, 523 U.S. 653, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998) regarding the scope of section 301 jurisdiction apply. Resolving all doubts in favor of defendant, the nonmoving party, and examining the defendant's counterclaims as a whole, the court does not agree that defendant asserts a claim for contract invalidity. In fact, plaintiff asserts a claim for breach of the contract at issue, implicitly stating that the contract validly existed. Accordingly, the court finds the principles announced in *Textron* do not apply to count II. Furthermore, it is unnecessary for the defendant to exercise section 301 jurisdiction, as this court has exercised federal supplemental jurisdiction over count II.

---

6. Count I of defendant's counterclaim asserts that plaintiff breached the labor contract allegedly entered into between plaintiff's representative, Mr. Anderson, and defendant's representative, Mr. Toney. Plaintiff does not seek summary judgment on count I of defendant's counterclaim.

7. Plaintiff has not raised a challenge to the court's jurisdiction over count I of defendant's counterclaim for breach of a labor agreement.

## B. Section 301 Preemption of State Law Claims

In its response, defendant contends that section 301 principles do not preempt the application of state law to defendant's fraudulent misrepresentation claim. Plaintiff has not specifically raised this argument in support of its motion. In the interest of justice and to ensure full treatment of the jurisdictional issue raised by plaintiff, the court will examine whether preemption under section 301 applies here. As detailed below, the court finds section 301 does not preempt application of state law to defendant's fraudulent misrepresentation claim.

By enacting section 301 of the LMRA Congress intended to ensure the uniform interpretation of collective bargaining agreements. *See Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 404, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). To determine whether a state law claim is preempted, this court must ask the threshold question whether resolution of the claim requires interpretation or application of the CBA. *See id.* at 412, 108 S.Ct. 1877; *Fry v. Airline Pilots Ass'n,* 88 F.3d 831, 836 (10th Cir.1996). In this context, a CBA is viewed as more than just the sum of its parts. "It comprises express provisions, industry standards, and norm[s] that the parties have created but have omitted from the collective bargaining agreement's explicit language." *Fry,* 88 F.3d at 836 (*citing Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 261–64, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994)). Thus, state law claims are preempted not only if they depend on a right found in the agreement, "but also if they implicate practices, procedures, implied authority, or codes of conduct that are part of the working relationship." *Id.*

However, where resolution of the state claims requires only "mere reference to" a collective bargaining agreement, a state law claim is not preempted. *See Ertle v. Continental Airlines, Inc.,* 136 F.3d 690, 693 (10th Cir.1998). Further, state law claims are not preempted even if the facts underlying the state claim are "precisely the same set of facts" that support an action under the collective bargaining agreement, so long as the state law claim can be resolved without interpreting the agreement itself. *Lingle,* 486 U.S. at 410, 108 S.Ct. 1877.

Here, the court finds that the defendant's fraudulent misrepresentation claim is not inextricably intertwined with any collective bargaining agreement. First, the court notes that at the time Mr. Anderson made the allegedly fraudulent misrepresentation to Mr. Toney in November 1996, there was no CBA in effect. Thus, it is unnecessary to reference a CBA to understand the misrepresentation allegedly made. Further, although the parties were in negotiation for the entry of their 1997 contract at the time Mr. Anderson allegedly made fraudulent misrepresentations, there is no evidence that they made reference to the 1997 contract negotiations during the pertinent discussions.

Second, even if a CBA were in effect at the time Mr. Anderson allegedly made misrepresentations, resolution of the state law fraudulent misrepresentation claim would not require interpretation of the agreement. Elements of a fraudulent misrepresentation claim include (1) an untrue statement of fact, (2) known to be untrue by the party making it, (3) made with the intent to deceive or recklessly made with disregard for the truth, where (4) another party justifiably relies on the statement, and (5) acts to his or her injury and damage. *See Gerhardt v. Harris,* 261 Kan. 1007, 1013, 934 P.2d 976, 981 (Kan. 1997). As the Ninth Circuit recognized in *Milne Employees Ass'n v. Sun Carriers, Inc.,* 960 F.2d 1401, 1408 (9th Cir.1991) (en banc), "[r]esolution of the first three elements—misrepresentation, knowledge of falsity, and intent to defraud—does not require interpretation of the employees' collective bargaining agreements. Instead, it turns on [defendant's] state of mind and involves 'purely factual questions pertain[ing] to . . . the conduct and motiva-

tion of the [union representative].'" *Id.* (*quoting Lingle,* 486 U.S. at 407, 108 S.Ct. 1877). Further, the last elements—reliance, justifiably made, and resulting damage—are also "'purely factual inquir[ies] pertain[ing] to the conduct of the [union representative].'" *Id.* (*quoting Lingle,* 486 U.S. at 407, 108 S.Ct. 1877).

Here, resolution of these factual inquiries does not require reference to a CBA. There is no evidence that any contract provisions were under consideration relevant to these factual inquiries. For instance, there is no showing that any agreement existed, or was under negotiation, prohibiting the plaintiff union from promising to refrain from using the defendant's agreement in future lawsuits. Accordingly, there is no need to construe or apply any provision of a CBA to determine liability under the state law claim. The court finds defendant's claim for fraudulent misrepresentation is not preempted by section 301.

### C. *Garmon* Preemption

 Plaintiff asserts that defendant's state law claim of fraudulent misrepresentation is preempted by federal labor law under the principles outlined in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Under the principles announced in *Garmon,* "[w]hen an activity is **arguably subject to § 7 and § 8 of the National Labor Relations Act,** the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *Viestenz v. Fleming Cos.,* 681 F.2d 699, 702 (10th Cir. 1982) (*quoting Garmon,* 359 U.S. at 245, 79 S.Ct. 773) (emphasis added). The *Garmon* preemption doctrine "is premised on Congress' desire to avoid conflicting rules of substantive law and remedy, thereby ensuring a consistent national labor policy." *Id.* (*quoting Garmon,* 359 U.S. at 242, 79 S.Ct. 773). In such circumstances, federal labor law preempts state law and the jurisdiction of the National Labor Relations Board is exclusive. *See id.* at 701–02. The United States Supreme Court has

elaborated on what it meant by "arguably:"

> If the word "arguably" is to mean anything, it must mean that the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in [the suing employee's] favor. That is, a party asserting pre-emption must advance an interpretation of the Act that is not plainly contrary to its language and that has not been "authoritatively rejected" by the courts or the Board. The party must then put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation.

*International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 395, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986). The party claiming preemption bears the burden of demonstrating that the challenged activity is arguably prohibited by the LMRA. *Id.*

 Plaintiff asserts that Mr. Anderson's conduct, which is the subject of defendant's counterclaim for fraudulent misrepresentation, would constitute a refusal to bargain collectively over the terms of Mr. Buzard's layoff under § 8 of the LMRA. Therefore, plaintiff asserts that plaintiff's fraudulent misrepresentation claim is **arguably subject to § 8 of the LMRA,** and jurisdiction over defendant's claim lies exclusively with the National Labor Relations Board. The court disagrees and finds that plaintiff's alleged failure to bargain in good faith over the layoff of Mr. Buzard is not arguably protected by § 7 or § 8 of the LMRA. Therefore, defendant's claim is not preempted by *Garmon.*

 Section 8(a)(3) of the LMRA makes it an unfair labor practice for a union "to refuse to bargain collectively with an employer." 29 U.S.C. § 158(a)(5). Further, § 8(d) of the LMRA defines bargaining collectively to mean the mutual obligation of an employer and a union to "confer in good faith." *Id.* at § 158(d). However, the duties to bargain and to do

so in good faith only attach to the "mandatory subjects of bargaining," set forth in § 8(d), *i.e.*, "wages, hours, and other terms and conditions of employment." *Id.*

An employer's decision to "lay off employees for economic reasons is a mandatory subject of bargaining." *Lapeer Foundry & Machine, Inc.*, 289 NLRB 952, 1988 WL 214127 (1988); *see also NLRB v. Carbonex Coal Co.*, 679 F.2d 200, 204 (10th Cir.1982) (employer's failure to bargain with union over economically motivated layoffs violated LMRA). The failure to bargain in good faith over a decision to lay off employees for economic reasons is a violation of § 8 of the LMRA. *See Carbonex*, 679 F.2d at 204.

Here, viewing the facts in the light most favorable to defendant as this court must, Mr. Buzard was laid off as a disciplinary measure related to his criminal charges. Although documented as a layoff both in unemployment agency records and in internal company documents, the layoff was truly a discharge. The discharge was fashioned as a layoff solely to benefit Mr. Buzard's financial needs. There is no evidence to indicate that defendant choose to lay off Mr. Buzard to address its own economic needs.

The National Labor Relations Board has recently addressed a case with a similar factual background. In *Shane Felter Industries*, 314 NLRB 339 (1994), the Board found that an employer's failure to bargain with the union over the disciplinary discharge of two employees, despite state unemployment agency records calling the discharges a layoff, was not a violation of the LMRA. In reaching its decision, the Board indicated that the discharges, characterized as layoffs, were for disciplinary, rather than economic reasons. *See id.* at 344–45. Plaintiff has not advanced an interpretation of the Act that is contrary to this recent pronouncement of the National Labor Relations Board. The court finds plaintiff has not put forth sufficient evidence or advanced a plausible interpretation of the LMRA for this court to find

that the Board could reasonably uphold plaintiff's assertion that the parties are required to bargain over non-economically motivated layoffs.

Further, the court notes that no evidence of anti-union animus has been presented. The LMRA does not prohibit the discharge of an at-will employee for disciplinary reasons. *See Cannady v. NLRB*, 466 F.2d 583, 586 (10th Cir.1972) ("An employee can be discharged for a good reason, a bad reason, or no reason at all where antiunion motivation has not been established.").

Accordingly, the court finds that defendant's claims for fraudulent misrepresentation do not appear to be "indistinguishable from an unfair labor practice claim that could have been pursued before the National Labor Relations Board." *See Hanley v. Lobster Box Restaurant, Inc.*, 35 F.Supp.2d 366, 369 (S.D.N.Y.1999) (*citing Kolentus v. Avco Corp.*, 798 F.2d 949, 961 (7th Cir.1986)). Therefore, *Garmon* principles do not require this court to yield jurisdiction to the National Labor Relations Board. Plaintiff's motion for summary judgment on count II of defendant's counterclaim is denied.

## VI. Defendant's Request for Attorney Fees

In its counterclaim, defendant prays to recover the costs and expenses incurred in defending against plaintiff's action to compel arbitration. Plaintiff seeks summary judgment asking the court to find defendant is not entitled, as a matter of law, to these expenses. Specifically, plaintiff argues that because section 301 does not authorize an award of attorney fees, under the "American Rule," defendant is not entitled to collect fees from plaintiff. The court denies summary judgment to plaintiff regarding attorney fees.

Absent statutory authorization, attorney fees are not ordinarily recoverable by prevailing parties in federal litigation. *See Alyeska Pipeline Serv. Co. v.*

*Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Section 301 of the LMRA contains no authorization for the award of attorney fees to prevailing parties filing suit under the statute. *See* 29 U.S.C. § 141 *et seq.; Aguinaga v. United Food and Commercial Workers Int'l Union,* 993 F.2d 1480, 1483 n. 2 (10th Cir.1993).

At least one court has recognized an exception to the American Rule where attorney fees are not sought as incidental to the claim, but rather are sought as actual damages in the suit itself. In *Anchor Motor Freight, Inc. v. International Bhd. of Teamsters,* the Sixth Circuit recognized that the Supreme Court's *Alyeska* decision did not affect cases in which "the attorney fees are not an award to the successful litigant in the case at hand, but rather are the subject of the law suit itself." 700 F.2d 1067, 1072 (6th Cir.1983) (citing *Scott v. Local Union 377,* 548 F.2d 1244, 1246 (6th Cir.1977)). Applying this exception, the Sixth Circuit found the defendant union was not precluded from recovering costs it incurred while defending against an action filed in breach of a covenant not to sue. The Tenth Circuit has not explicitly recognized this exception, although it has discussed it in the context of a state law claim for attorney fees. *See Wellens v. Columbia Cas. Co.,* 946 F.2d 902 (10th Cir.1991) (unpublished).

 The court finds the exception applies to the case at hand. Here, defendant filed a counterclaim for breach of contract under section 301. The contract at issue involved an agreement by the plaintiff not to assert that Mr. Buzard's discharge was a layoff. Defendant contends that plaintiff breached this agreement when it sought to compel arbitration over Mr. Buzard's discharge. Specifically, plaintiff challenges the legality of Mr. Buzard's discharge under the parties' 1997 contract, by arguing defendant had actually placed Mr. Buzard on an administrative leave. Defendant argues plaintiff is asserting that Mr. Buzard was placed on layoff status, in violation of

the agreement. Defendant asserts that it entered into the agreement with plaintiff specifically to avoid the costs of litigating over Mr. Buzard's discharge.

Therefore, examining the evidence presented and drawing all reasonable inferences in favor of defendant, the court finds that defendant is not precluded from recovering attorney fees incurred in conjunction with its breach of contract claim. Plaintiff's request for summary judgment regarding attorney fees is denied.

## VII. Order

**IT IS ORDERED** that defendant's motion for summary judgment (Doc. 52) is granted in part. Defendant's motion is denied as to count I of plaintiff's complaint. Defendant's motion is granted as to count II of plaintiff's complaint. Count II of plaintiff's complaint is hereby dismissed.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Doc. 54) is granted in part. Plaintiff's motion as to count I of its complaint is granted. The parties are ordered to submit the grievance regarding Mr. Buzard's discharge to arbitration·as specified in the parties' 1997 contract. Plaintiff's motion as to count II of defendant's counterclaim is denied. Plaintiff's motion regarding defendant's prayer for attorney fees is denied.

The court notes that no motion was made regarding count I of defendant's counterclaim. Accordingly, the following claims may proceed to trial: 1) defendant's counterclaim I for breach of contract, and 2) defendant's counterclaim II for fraudulent misrepresentation.

**IT IS SO ORDERED.**